THE PEOPLE *ex rel.* The Lafayette, Bloomington and Mississippi Railway Company

*v.*

THE SUPERVISOR AND CLERK OF OLDTOWN.

1.  MUNICIPAL SUBSCRIPTION — *validity of election as depending on petition.* Where a railway charter provided, that when ten legal voters of any city, county or town should present to the clerk thereof a written application requesting an election, to determine whether a subscription or donation should be made to the company, such clerk should receive and file the application and

call an election, it was *held,* that a written application, signed by ten legal voters, was necessary to the validity of any election under such charter, and without proof that such application was delivered to the clerk, and was signed by ten legal voters, no subscription could legally be made, nor could the municipality be compelled to issue its bonds in pursuance of a vote. And proof that such application was signed by ten citizens is not sufficient, as a citizen may or may not be a legal voter.

2. MANDAMUS—*right must be clear.* In an application for a *mandamus,* the burden is on the relator to clearly establish the right sought to be enforced. If it be doubtful, the writ will not be awarded. The loss of a paper showing the right, will *not dispense* with clear proof that it contained all the legal requirements.

This was an application in this court for a *mandamus,* the material facts of which are stated in the opinion of the court.

Messrs. BEASON & BLINN, and Messrs. WELDON & McNULTA, for the relator.

Messrs. STEVENSON & EWING, for the respondents.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

This is an application to this court, on the relation of the Lafayette, Bloomington and Mississippi Railway Company, for a writ of *mandamus,* to the supervisor and town clerk of the town of Oldtown, to issue certain bonds of that town, and deliver them to the relator, in payment for an equal amount of the relator's capital stock, pursuant to a vote of the legal voters of the town, at an election held on the 12th day of December, 1867, as is alleged.

Issues of fact were made up on the allegations in the petition and answers, and referred to the circuit court of Logan county for trial.

Of those issues, and the verdicts thereon, the following only is deemed necessary to be noticed:

"No. 1.    Was there a petition presented to the town clerk of the town of Oldtown, signed by ten legal voters of said town, requesting that an election should be held by the

legal voters of said town, to determine whether said town would subscribe to the capital stock of the Lafayette, Bloomington and, Mississippi Railway Company the sum of $10,000, and was said petition so presented ten days prior to the 12th day of December, 1867?"

To which the jury responded: "We, the jury, find the question No. 1 in the negative, and find for the defendant."

The relator insists this finding is unauthorized by the evidence, and should be set aside.

We have carefully examined the evidence, as set out in the abstract, and perceive no cause to disagree with the jury.

Donnelly, the town clerk, to whom the alleged petition is claimed to have been presented, testifies, that no petition praying for the holding of the election on the 12th of December, 1867, was ever presented to him.

O. T. Reeves testifies to the preparing of a petition for such election, getting signers thereto, and that Donnelly had the petition at a desk in his (Reeves') law office in Bloomington, and that they discussed the date to be put in the notices for the election. He does not say that he presented the petition to Donnelly, and directed or requested him to file it in his office, as town clerk; and he says, expressly, that he has no recollection of Donnelly taking it away with him.

H. G. Reeves, who was employed in the law office of O. T. Reeves, says, that the petition was prepared, and, also, notices of the election; that they were in the law office of O. T. Reeves. He does not know that he specified what the papers were, and he was not in the office when Donnelly left, and so can not know what papers he took away with him. No witness states, specifically, that Donnelly's attention was called to the petition, and he directed or requested to file it. Donnelly admits that he got notices of the election at the office of Reeves at the time mentioned by the before named witnesses, but denies that he got anything else.

Without imputing perjury to Donnelly, which is not justifiable from anything in the evidence, we must presume the

petition was never observed by him, and was left in the office of Reeves, and, by those in charge of the office, the omission was not subsequently noticed. This reconciles the statement of all the witnesses, and is both reasonable and more charitable than any other view of the evidence.

Another witness thinks he subsequently saw the petition in the office of the town clerk. But, from other facts proved, we think he is clearly mistaken. There had been two prior petitions for like elections, and elections pursuant thereto held, resulting against the proposed subscription—one in June and the other in November—and the witness was evidently misled by the petition for the latter election, which was on file in the town clerk's office at the time of the examination he refers to.

But, apart from this, there is not a particle of evidence, that we have been able to discover, that the petition was signed by ten legal voters of Oldtown.

The petition prepared by Reeves is proved to have been signed by ten citizens of that town, and more, but no witness shows that they were legal voters of that town. Citizens and legal voters are not synonymous. Minors and females may be citizens, and yet they are not legal voters. It is provided by appellant's charter, in the fourteenth section, "Whenever ten legal voters of any such city, county or town shall present to the clerk thereof, a written application requesting that an election shall be held to determine whether such village, city, county or town shall subscribe to the capital stock of said company, or make a donation thereto, or loan money, bonds or its credit to aid in constructing and equipping said railway, * * * such clerk shall receive and file said application, and shall immediately proceed to post notices," etc.

It is, therefore, the application that confers power to call the election, and without it there could be no valid election.

In a proceeding of this character, the burden is on the relator to clearly establish the right sought to be enforced. If it be doubtful, the writ will not be awarded. *People ex rel. v.*

*Glann et al.* 70 Ill. 232; *People, etc.* v. *Mayor,* 51 id. 28; *People, etc.* v. *Hatch,* 33 id. 9. And the petition having been lost, did not dispense with proof sufficient to clearly show that it contained the legal requirements.

Complaint is made of an instruction given by the circuit court to the jury, on the ground that it was calculated to mislead. The instruction is, to some extent, perhaps, obnoxious to criticism. Still we do not conceive that it could seriously have prejudiced the relator's rights. In the last respect pointed out above, at least, as we conceive, the evidence was wholly insufficient to have authorized any other verdict than that rendered, and this could not have been obviated by any instruction.

It follows, since we are unwilling to set aside the verdict, the *mandamus* must be denied.

*Mandamus denied.*