JOHN DORSEY

*v.*

O. H. BRIGHAM *et al.*

*Opinion filed December 21, 1898.*

1. ELECTIONS—*construction of act of 1891, as to qualifications of female voters.* The act of 1891, (Laws of 1891, p. 135,) authorizing women to vote at school elections, adopts only such of the qualifications prescribed for electors in section 1 of article 7 of the constitution of 1870 as require such electors to be citizens of the United States above the age of twenty-one years.

2. SAME—*when women become citizens by virtue of the marriage relation.* Under section 1994 of the Revised Statutes of the United States every woman who might lawfully be naturalized becomes a citizen by virtue of her marriage with a citizen of the United States.

3. SAME—*citizenship is conferred upon foreign born minors by the naturalization of the father.* Under section 2172 of the statutes of the United States citizenship may be conferred upon foreign born persons, male or female, through the naturalization of the father during their minority, and wives of sons so made citizens become citizens by virtue of the marriage relation.

4. SAME—*suffrage is not a right dependent upon citizenship.* Naturalization confers upon the person naturalized, whether male or female, only civil rights, and not the right to vote; and a female citizen is not entitled to vote in the absence of the authority of a statute in the State of her residence.

5. SAME—*the burden is upon one alleging illegal voting.* One alleging illegal voting has the burden of proof, as a crime is thus charged, which it will be presumed has not been committed.

6. SAME—*what will not overcome the presumption that voting is legal.* Proof that women who voted at a school election were foreign born and wives of foreign born husbands does not establish a charge of illegal voting, although there is no record proof of the naturalization of the husbands, where there is no affirmative proof tending to show that they were not naturalized.

7. SAME—*for school officers—qualifications of age and of residence are essential.* Women who have not resided in the county ninety days before an election for school officers, or who are under the age of twenty-one years at the time of such election, are not legal voters.

8. SAME—*actual residence in the county is necessary.* A woman who has resided in the county less than ninety days before an election for school officers is not entitled to vote although her husband has been such resident for the full period, as, while the husband's domicil is constructively the wife's, actual residence is necessary.

9. SAME—*one visiting in district is not a resident.* A married daughter who had resided in a certain school district before her marriage but who has lost her residence there, her husband being engaged in business in another part of the county, does not gain a residence, so as to entitle her to vote at an election for school officers, by remaining in the district more than thirty days before the election without intending to make it her permanent abode.

10. SAME—*subsequent citizenship does not legalize prior vote.* The vote of a woman at a school election who was an alien at that time is not legalized by her subsequent marriage to a citizen.

11. SAME—*woman is not a citizen whose husband has merely declared his intention.* A female alien whose husband has declared his intention to become a citizen of the United States, but who is not yet entitled to receive his naturalization papers, is not entitled to vote at an election for school officers.

12. SAME—*naturalization of father does not give citizenship to adult children.* The naturalization of a father after his children have reached majority does not confer citizenship upon them.

APPEAL from the County Court of Livingston county; the Hon. C. M. BARICKMAN, Judge, presiding.

N. J. PILLSBURY, and RAY BLASDEL, for appellant:

Female citizens of the United States having the necessary constitutional and statutory qualifications as to age and residence are entitled to vote for members of boards of education on the same terms as male citizens, and their qualifications are the same except as to sex. Laws of 1891, p. 135; *Plummer* v. *Yost,* 144 Ill. 68; *People* v. *English,* 139 id. 632.

Children of naturalized citizens of the United States under the age of twenty-one years and residing in the United States are deemed citizens thereof. U. S. Rev.

Stat. sec. 2172; *Kreitz* v. *Behrensmeyer*, 125 Ill. 141; *People* v. *Newell*, 38 Hun, 78; *Dale* v. *Irwin*, 78 Ill. 170; 16 Am. & Eng. Ency. of Law, p. 225, par. 2, note.

Wives of citizens of the United States, native or naturalized, are citizens of the United States. U. S. Rev. Stat. sec. 1994; *Kreitz* v. *Behrensmeyer*, 125 Ill. 197; *Kelley* v. *Owens*, 7 Wall. 498; *Leonard* v. *Grant*, 6 Sawy. 603.

Residence is defined to be a permanent abode. Rev. Stat. chap. 46, sec. 66.

To acquire a residence requires a personal presence. *In re Collins*, 64 How. Pr. 63; *Behrensmeyer* v. *Kreitz*, 135 Ill. 635; *Pells* v. *Snell*, 130 id. 379.

There must be a union of act and intention. *Smith* v. *People*, 44 Ill. 16; *Hayes* v. *Hayes*, 74 id. 312; *People* v. *Connell*, 28 Ill. App. 285.

C. C. & L. F. STRAWN, for appellees:

*Actual* residence is to be distinguished from *mere* residence, the former meaning the actual, continuous, personal presence of the person in the place at the time and for the length of time prescribed as a condition precedent to voting, while the latter partakes partly, but not entirely, of the nature of domicil, from which the voter may be absent most of the time without losing his right to vote. The distinction between actual residence and domicil is pointed out in the following cases: *Garner* v. *Board of Education*, 5 Dak. 259; *Walker* v. *Walker*, 1 Mo. App. 403; *Savage* v. *Scott*, 45 Iowa, 130; *Way* v. *Way*, 64 Ill. 407; *Chariton Co.* v. *Moberly*, 59 Mo. 238; *Alston* v. *Newcomer*, 42 Miss. 186; *Briggs* v. *Rochester*, 16 Gray, 337; *Frost* v. *Brisbin*, 19 Wend. 11; *In re Hughes*, 1 Tuck. 38; *Brown* v. *Boulden*, 18 Tex. 734; *In re Wrigley*, 8 Wend. 140; *Zambrino* v. *Railroad Co.* 38 Fed. Rep. 453; *Keller* v *Carr*, 40 Minn. 428; *Niblack* v. *Goodman*, 67 Ind. 174; *Penly* v. *Waterhouse*, 1 Iowa, 498; *Fitzgerald* v. *Arel*, 63 id. 104; *Blodgett* v. *Ultey*, 4 Neb. 25; *Miller* v. *Tyler*, 61 Mo. 401; *Hackett* v. *Kendall*, 23 Vt. 375; *Vanlandingham* v. *Huston*, 4 Gilm. 125.

The terms "domicil," "inhabitancy" and "residence" have not precisely the same meaning, for a person's domicil may be in one State and his residence in another. *Lyman* v. *Fizke*, 17 Pick. 234; *Thorndyke* v. *Boston*, 1 Metc. 245; *Foster* v. *Hall*, 4 Humph. 348; *Warren* v. *Thornastor*, 43 Me. 312; *Jefferson* v. *Washington*, 19 id. 293; *Bartlett* v. *New York*, 5 Sandf. 44; *Risewick* v. *Davis*, 19 Md. 82; *Burrell* v. *Jewett*, 2 Robt. 701; *Mayor* v. *Genet*, 4 Hun, 487; *Tazewell County* v. *Davenport*, 40 Ill. 197.

Upon the authorities cited and the circumstances of the case at bar we insist that the question, "Can a person who has never been in a given place in person be in a political sense a resident of such place, entitled to vote there?" should be answered in the affirmative. After voting, the presumption arises that the voter was a legal voter, and unless such presumption be overcome by positive evidence the ballot must be counted. *Clark* v. *Robinson*, 88 Ill. 500; *Kendall* v. *Barker*, 89 id. 126.

The presumption arising from voting includes everything necessary to make the person so voting a qualified voter; and residence of sufficient time in the precinct where he votes being one requisite, the presumption covers this as well. *Harbaugh* v. *Cicott*, 33 Mich. 252.

Where one alien born has voted at an election the law presumes that he has been naturalized, until the contrary is shown. To presume otherwise would be to presume the commission of a crime. *Beardstown* v. *Virginia*, 76 Ill. 34; 81 id. 541; *Behrensmeyer* v. *Kreitz*, 135 id. 627.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The appellant and one S. S. Hitch were candidates upon one ticket for members of the board of education at an election held on the 17th day of April, 1897, in school district number 1, township 26, range 8, east, in Livingston county, and the appellees were candidates for the same offices upon another ticket. Two members of the board were to be elected. The judges of the election de-

clared said S. S. Hitch duly elected to one of the said offices and that the other candidates had each received an equal number of votes. In some manner not clearly disclosed and not necessary to be known, the judges cast off the tie and declared appellee Brigham elected by lot. This is a petition filed by the appellant, Dorsey, to contest the election of said Brigham and to establish that appellant was duly elected.

By agreement of the parties the ballots were counted in the presence and under/the supervision of the court, and the result was, 260 ballots were found for the appellant and 258 each for Brigham and Stanford. On application of the appellees verification of the count was allowed, the result being, 260 votes for appellant, 259 for Stanford and 257 for Brigham. The court overruled the motion of appellant for final judgment declaring him to be the duly elected member of the board of education, and on motion of the appellees ordered the re-count and verification to be stricken from the record, and appellant saved exceptions. The petition and the answer thereto challenged the legal right of a number of voters to cast ballots at said election. A hearing before the court resulted in an order that the petition of appellant be dismissed. This is an appeal to obtain a reversal of such order.

A number of ballots were cast at the election by women who were foreign born and had not been naturalized by judicial decree or the judgment of any court. Certain of these female voters were the wives, others the widows, of husbands who were also foreign born, but who were shown, by certificates of naturalization introduced in evidence, to have been admitted to citizenship by the order or judgment of competent courts. Other of such female voters were the wives, others the widows, of foreign born husbands who, it was insisted, had been naturalized by judicial proceeding, but in whose cases neither certificates of such naturalization nor other record proof thereof

was produced; and still other of such female voters were the wives or widows of native born husbands, and still other of such female voters claimed citizenship through the naturalization of their fathers or the fathers of their husbands. In some cases the female voters were married to their husbands in foreign countries, and in the cases of others the ceremony of marriage was celebrated in the United States. But in all of the cases the relation of husband and wife existed and was maintained in the United States. Whether these women were lawfully entitled to vote at said election arises first for decision.

Paragraph 342 of chapter 46 (Starr & Curtis' Stat. 1896, p. 1741,) is as follows: "Any woman of the age of twenty-one years and upwards belonging to either of the classes mentioned in article 7 of the constitution of the State of Illinois, who shall have resided in this State one year, in the county ninety days and in the election district thirty days preceding any election held for the purpose of choosing any officer of schools under the general or special school laws of this State, shall be entitled to vote at such election in the school district of which she shall at the time have been for thirty days a resident: *Provided,* any woman so desirous of voting at any such election shall have been registered in the same manner as is provided for the registration of male voters."

One of the classes of persons the members whereof section 1 of said article 7 of the constitution of 1870 clothed with the right to exercise the elective franchise, comprised "every male citizen of the United States above the age of twenty-one years." In *People* v. *English,* 139 Ill. 622, and again in *Plummer* v. *Yost,* 144 id. 68, we held that the true construction to be put upon the statute above set out, authorizing women to vote at any elections where "any officer of schools" is to be chosen, is, that the qualification of sex prescribed in said section 1 of article 7 of the constitution was not intended to be adopted, and in the latter of these cases we held a woman could not be

denied the right to vote at such school elections on the ground the constitutional qualification of sex was lacking. The qualification of citizenship is, however, necessary under the said section and article of the constitution. If these women possessed the qualifications of age and residence required by the said paragraph 342 of chapter 46, authorizing women to vote at school elections, and were citizens of the United States, they were lawful voters at the school election in question.

Section 1994, title 25, entitled "Citizenship," of the Revised Statutes of the United States, is as follows: "Any woman who is now or may hereafter be married to a citizen of the United States, and who might herself be lawfully naturalized, shall be deemed a citizen." Under the Naturalization act in force when the foregoing section was enacted, any "free white person" not an alien enemy might lawfully be naturalized. The term, "who might herself be lawfully naturalized," incorporated in said section 1994 above recited, therefore only limited the application of the law to free white women not alien enemies. (*Kelly* v. *Owen,* 7 Wall. 496.) An alien enemy is one who owes allegiance to an adverse belligerent nation. None of these women were of such nationality, but all were friendly aliens. In *Minor* v. *Happerset,* 21 Wall. 162, it was declared that "from the commencement of the legislation upon this subject [naturalization] alien free white women and alien minors could be made citizens by naturalization."

The proper construction of said section 1994 of the Revised Statutes of the United States is, every woman who might be lawfully naturalized by a judicial tribunal, who lives in a state of marriage with a husband who is a citizen, becomes herself a citizen by force of the existence of the marriage relation. In *Kelly* v. *Owen, supra,* it was said: "Whenever a woman who under previous acts might be naturalized is in a state of marriage to a citizen, whether his citizenship existed prior to the act or subse-

quently, or before or after the marriage, she becomes by that fact a citizen also." It, therefore, would seem clear each woman voter in question who sustained the relation of wife to a citizen of the United States became also a citizen of the United States.

Counsel for appellees, however, urge the act of Congress conferring citizenship upon a foreign born woman because of the existence of the marriage relation with a citizen is in contravention of section 8 of article 1 of the constitution of the United States. This section confers upon Congress the power to enact legislation whereby aliens may become citizens, and is as follows: Congress shall have power "to establish an uniform rule of naturalization and uniform laws upon the subject of bankruptcies throughout the United States." The argument of counsel is, that the law-making power of the United States having adopted a rule or statute providing for the naturalization of aliens, both male and female, by proceedings in a judicial tribunal, could not, without violating the rule of uniformity prescribed by the constitution, enact another statute by the terms whereof certain alien women might become clothed with the rights of citizenship without complying with the provisions prescribed by the statute authorizing naturalization through the medium of the courts. The purpose of granting to the Congress of the United States the power of enacting a law or rule for the naturalization of aliens was to deprive the several States of that power, and the reason was, that if the power remained with the different States the terms and conditions of citizenship would depend upon the will and pleasure of each of the States and might be widely and materially different. The requirement of the constitution that Congress should enact a uniform rule of naturalization is properly construed to mean, the mode or manner of naturalization prescribed by Congress should have uniform operation in all the States. Aside from this, the enactment in question has uniform operation as

to all alien women who sustain the relation of wife to a citizen, and its benefits and privileges extend equally and uniformly to all such alien women within the relation and circumstances for which it provides. It operates upon a general class of persons, and extends to all of that class who are in the same situation or circumstances. It is, therefore, a uniform rule or enactment, even if a proper construction of the said fourth paragraph of section 8 of article 1 of the constitution of the United States requires that character of uniformity contended for by appellees. *Lippman* v. *People,* 175 Ill. 101.

Counsel urge the object of the act conferring citizenship upon a married woman, the wife of a citizen, is to confer civil rights only,—not political rights. This position is correct. Naturalization by judicial proceeding, or otherwise, under the provisions of any of the acts of Congress, whether the person naturalized be male or female, confers only civil rights,—*i. e.,* liberty of person and conscience, right to acquire and hold and transfer property, to sue and defend, security in person, estate and reputation, and other civil rights. Naturalization creates the person naturalized a citizen, whether male or female. But suffrage is not a right belonging to citizenship. (*Van Valkenberg* v. *Brown,* 43 Cal. 50.) Citizens and legal voters are not synonymous. Minors and females may be citizens and yet not legal voters. (*People* v. *Supervisors of Oldtown,* 88 Ill. 202.) "A citizen, in the popular and appropriate sense of the term, is one who by birth, naturalization or otherwise is a member of an independent political society called a State, kingdom or empire, and as such is subject to its laws and entitled to its protection in all his rights incident to that relation; and the right to vote, as we have just seen, is not necessarily incident to or co-extensive with the right of citizenship." *Blanck* v. *Pausch,* 113 Ill. 60.

As we have seen, a woman may become naturalized by order or judgment of a court under the Federal statute

providing for naturalization in that manner, and thereby become a citizen, and yet such woman would not have had the right to vote at any election in this State prior to the enactment of the statute under consideration, relating to the election of school officers. On the other hand, persons not citizens of the United States may lawfully vote in this State. Section 1 of article 7 of the constitution of 1870 endows every person with the right to vote who had resided in the State one year, in the county ninety days and in the election district thirty days next preceding the election, and who was an elector in the State on the first day of April, 1848. The constitution of 1848 vested every white male citizen above the age of twenty-one years who had resided in the State one year, and every white male inhabitant of the age aforesaid who was a resident of the State at the time of the adoption of the constitution, with the right of suffrage. In *Spragins* v. *Houghton,* 2 Scam. 377, an "inhabitant" was defined to be one who lives in a place and has there a fixed and legal settlement, and that to determine whether one who was an inhabitant of Illinois was entitled to vote under the constitution of 1818, which conferred the elective franchise on all white male inhabitants above the age of twenty-one years who had resided in the State for six months, it was wholly unnecessary to inquire whether he was a "citizen" of the United States, but only necessary to know he was an inhabitant of the State, within the meaning of the word as given by the court. Therefore, under our present constitution, any white male inhabitant of the State who was an inhabitant of the State in 1848, and twenty-one years of age at that time, may lawfully vote in this State, though he be foreign born and never naturalized. A foreign born woman admitted to citizenship by a judicial proceeding under the naturalization statutes of the United States, or under the statutes of the United States giving citizenship to the wife of a citizen of the United States, becomes

thereby endowed with the civil rights of a citizen of the United States; but such naturalization or condition of citizenship would have no effect, within itself, to constitute such woman a voter in the State, in the absence of a statute of this State conferring such political right.

We need not enter upon the discussion of the power of the Federal government to declare the qualifications of voters. It has never attempted to exercise such power, and, aside from the limitation created by the fifteenth amendment to the Federal constitution, that a citizen of the United States shall not be denied the right of suffrage on account of race, color or previous condition of servitude, the right to vote depends wholly upon the enactments of the law-making bodies of the respective States. In our State the statute under consideration, and the section of the constitution of 1870 to which it refers, operating together, have conferred upon all women who are citizens of the United States and have the specified qualifications as to age and residence, the right to exercise the elective franchise at elections for school officers. Said women become, by force of the statute, the constitution and their condition of citizenship, voters at elections for school officers in this State whether the condition of citizenship resulted from an order or judgment of a court in a naturalization proceeding, or from the statute of the United States creating the condition of citizenship from the existence of the marriage relation between the woman and one who was a citizen by birth, or, being foreign born, became a citizen by judicial order or by operation of law. Citizenship may also be conferred upon foreign born persons, male or female, through the naturalization of the father during the minority of such persons. (U. S. Stat. sec. 2172, title 30.) In this case, some of the female voters whose ballots were challenged were of this class, and others sustained the relation of wife to husbands who were of this same class. These women thus became citizens of the United States, and, if they had the requisite

qualifications of age and residence, became lawfully entitled to vote by the force and effect of the said enactment of this State conferring upon women the right to exercise the elective franchise for school officers. In the cases of the greater number of the women voters who claimed to be citizens by virtue of the citizenship of their husbands, the husbands were aliens and the naturalization of such husbands was established by record evidence.

Mrs. M. Blackburn, Mrs. Fredricka Comberink, Mrs. Mary O'Hara, Mrs. Ellen Moran and Mrs. Margaret Beckman voted for appellant. They were all foreign born, and claimed citizenship by virtue of the alleged citizenship of their respective husbands. Their husbands, respectively, were aliens, and no record proof of the naturalization of any of them was produced. The appellees challenged the legality of the ballots cast by these women. It was, however, stipulated by the parties that the husband of Mrs. Blackburn was a citizen of the United States. In view of what has been said she must be regarded as a legal voter. The appellees produced oral evidence tending to show, and it may be conceded did establish, that Mrs. Comberink, Mrs. O'Hara, Mrs. Moran and Mrs. Beckman were all born in foreign countries, and that they had not been naturalized by the judgment of any court awarding them certificates of naturalization. It then appeared that each of these women, and the husband of each of them, was of foreign birth, and there was no record evidence or certificates of naturalization produced showing either of them, or the husband of either, had been naturalized. Appellees contend that in this state of the proof each of these women must be regarded as incompetent to vote. We do not assent to this. The allegation these women cast illegal votes was made by the appellees. It involved a charge of crime, one voting without qualification being liable to punishment criminally. The presumption would be they had voted legally and had not committed a crime.

 The appellees' challenges also questioned the correctness of the official acts of the election officers, which are *prima facie* correct. It was incumbent upon the appellees to overcome this presumption of innocence and of proper official action by proof. Full and conclusive proof is not, however, required where a party has the burden of proving a negative, but it is necessary the proof should be at least sufficient to render the existence of the negative probable in order to overcome the presumption. (*City of Beardstown* v. *City of Virginia,* 76 Ill. 34; *Behrensmeyer* v. *Kreitz,* 135 id. 591.) The presumption is these voters had become in some legal way naturalized citizens. This naturalization may have come through the naturalization of their husbands. Proof that they were aliens and had not themselves become naturalized would not overcome the presumption. The mere absence of proof as to whether or not their husbands had been naturalized was equally ineffectual to overcome the presumption. Some proof tending to show their husbands had not been naturalized, or at least sufficient to create a probability that the husbands had not been naturalized, was essential to overcome the presumption of innocence and of the regularity of the acts of the judges of the election, and warrant the court in declaring the votes had been cast in violation of law. *Behrensmeyer* v. *Kreitz, supra.*

Parol evidence was heard tending to show the respective husbands of these voters had been naturalized. Appellees strenuously insist this parol evidence was inadmissible. We need not determine that contention, for if such evidence was disregarded as inadmissible the record would but remain barren of proof tending to show, or make it most probable, such husbands had not been naturalized, and such being the condition of the record we must hold appellees' assertion these voters were not legal voters has not been maintained.

Annie Broadhead, alien born, voted for appellant. Her husband, John, was also an alien. He came to the United

States when four years old, with his mother, who came to join his father, George Broadhead, who had preceded them. A certificate was introduced showing the naturalization of the father, George Broadhead, on the 17th day of September, 1868, at which time the son, John, was a minor of the age of seventeen years. The naturalization of the father conferred the rights of citizenship upon the son, John, and Annie, the voter, became a citizen by virtue of her marriage with John.

Nicholas Pool, and his wife, Crescinda, voted for the appellant. Both were foreign born. Nicholas Pool was brought to the United States by his father, Joseph Pool, when about three years old. He testified his father voted while he was a minor, and he voted because he understood and believed his father became a legal voter during his minority. There was no record proof that the father had ever been naturalized, nor any proof tending to render it most probable that the father had not been naturalized. In this state of the evidence the presumption that Nicholas Pool was a legal voter must prevail. The relation of husband and wife existing between Nicholas and Crescinda conferred upon Crescinda the right of citizenship, and by force of the statute she became a legal voter.

Mrs. Annie Miller, who voted for both the appellees, had not resided in the county ninety days preceding the election. She was not a legal voter, and appellees so conceded the truth to be.

Mrs. Lizzie Rosendahl voted for both the appellees. She was but nineteen years old. Her vote is illegal, and so conceded by the appellees.

Mrs. A. Greenstone voted for both the appellees. The election occurred on the 17th day of April, 1897. The statute authorizing women to vote at the election grants the right to any woman who shall have resided in the county ninety days next preceding the election. To answer the qualification of residence the voter at this elec-

tion must have been a resident of Livingston county on the 18th day of January, 1897. Mr. Greenstone, husband of the voter, together with the voter, his wife, resided in Chicago, Cook county, until about the 11th day of January, 1897. He then went to Livingston county and commenced work there as a tailor. His wife did not accompany him, but remained at the Chicago home with their family until the 12th day of February, 1897, when she came to Chatsworth and joined her husband. She had never been in Livingston county before the said 12th day of February, which was but sixty-five days prior to the day of election, the day of the election included. By operation of law the domicil of the husband is, for many purposes, the domicil of the wife. The marriage relation implies a common home for the husband and wife. In view of the fact married persons may not be able to agree as to a place of residence, authority must reside in one of them to determine where the home shall be. The law casts upon the husband the burden of supporting the family, and for that reason empowers him to determine where the family shall abide. The domicil of the husband therefore fixes the domicil of the wife for purposes connected with the marriage relation and the duties of both husband and wife. The domicil of Mrs. Greenstone for such purposes and duties was in Livingston county at once after her husband determined to make the home of himself and family in that county. The statutory qualification is, the voter shall have resided in the county ninety days next preceding the election. The meaning to be given the word "reside" is declared by the statute, (Rev. Stat. sec. 66, chap. 46,) as follows: "A permanent abode is necessary to constitute a residence, within the meaning of the preceding section." An abode is the place where a person dwells. (Anderson's Law Dic. title "Abode.") Residence and domicil may, in some cases, have the same meaning, but frequently they have other and inconsistent meanings and import entirely different ideas.

(Anderson's Law Dic. p. 376; 21 Am. & Eng. Ency. of Law, pp. 124, 125.) "A resident of a place is one whose place of abode is there and has no present intention of removing therefrom." (21 Am. & Eng. Ency. of Law, p. 122.) A married woman, by operation of law, may have a domicil in a place where she has never been, but it could not, with any correctness of speech, be said she was a resident of that place. On the day of the beginning of the period of ninety days preceding the election in question Mrs. Greenstone was not in the county of Livingston and had never been in that county on any day prior thereto, nor was she ever in the county until some twenty days after the beginning of the period of ninety days next preceding the election. She had her domicil in the county, with her husband when he fixed that as the home of himself and family, but she did not become a resident until she was actually physically within the limits of the county. Her vote must be excluded from the count.

Mrs. Emma J. Bennett cast a ballot for the appellees. Prior to her marriage she resided in the school district as a member of her father's family. Mr. Bennett, who became her husband, also resided in the school district at that time, but before the marriage he moved to Pontiac, in the same county but not in the school district, and still later changed his place of residence from Pontiac to Chicago, where he resided at the time of the marriage. The marriage occurred at the home of the bride's father in the school district, and Mrs. Bennett accompanied her husband to his home in Chicago. She visited her father's family, sometimes accompanied by her husband, but her husband did not again become a resident of the school district. Prior to the beginning of the year in which the election was held the husband located in Forrest, in Livingston county but not in the school district, and engaged in business there as a photographer. Mrs. Bennett assisted her husband in the photograph gallery, and was with him in Forrest a portion of the

time and at times with her father's family. Mrs. Bennett's residence was at one time in the school district, but she lost her residence there and gained a residence at another place. Her presence in her father's family after this was not with the intention to remain and make her permanent abode there, and she was not a resident, within the meaning of our election laws.

Mrs. Martha Crone, *nee* Wendtlandt, voted for the appellees. She was born in Germany and her father still resides in that empire. She had not been naturalized by judicial judgment or decree. She had not married when she cast her ballot at the election in question. On the 16th day of September following the election she intermarried with Christian Crone. If her husband was a citizen the marriage relation constituted her a citizen from thenceforth, but would have no retrospective effect. She was not a citizen when she voted, and for that reason was not a legal voter.

Mrs. Tenie Satoff voted for the appellees. She was a native of Germany, was married there and her husband died there. She came to this country an adult, has not re-married and was not naturalized by proceedings in the courts. She was an alien, and hence not a legal voter.

Mrs. Mary Rosenbaum voted for appellees. She was a native of Germany, as was also her husband. They were married there and removed to the United States. She had not been naturalized by order of any court nor had her husband. He filed his declaration of intention to become a citizen prior to the school election, but had not received his certificate of naturalization, nor had he become entitled to receive such certificate for the reason he had not been in the United States five years at the time of the election. He was not a citizen. (McCrary on Elections, sec. 71.) The existence of the marriage relation did not constitute the voter a citizen, her husband not being a citizen. Her ballot must be rejected.

The conclusion hereinbefore announced, that the wife
of a citizen, in virtue of the marriage relation, becomes
also a citizen, and under the statute with relation to the
election to school officers in question became a legal voter,
disposes of all ballots challenged by the appellees except
Lottie Hitch and Tillie Bock, whose ballots were for the
appellant. Lottie Hitch was born in England, is unmar-
ried, was never naturalized by any proceedings in court.
Her father was naturalized by judicial proceedings, but
not until after Lottie had reached her majority. Her vote
must be rejected. Tillie Bock had not reached the age of
twenty-one years when her vote was cast. She was chal-
lenged upon other grounds, but we need not consider or
decide the question of pleadings argued by the parties
in this respect, as the rejection of her vote will not change
the result which we think should have been declared by
the trial court.

It follows from what has been said, the ballots cast
for appellees by Mrs. Annie Miller, Mrs. Lizzie Rosen-
dahl, Mrs. A. Greenstone, Mrs. Emma J. Bennett, Mrs.
Martha Crone, *nee* Wendtlandt, Mrs. Tenie Satoff and Mrs.
Mary Rosenbaum, seven in number, must be rejected from
the count, and that the ballots cast by Lottie Hitch and
Tillie Bock for the appellant must also be rejected.

We need not determine whether the count as made by
the judges of the election or that had under the direction
and supervision of the court should be accepted, for the
reason upon the basis of the count least favorable to
him a majority of at least five ballots were cast for the
appellant over either of the appellees.

The order and judgment appealed from is reversed
and the cause is remanded, with directions to the county
court to enter an order and judgment declaring the ap-
pellant to have been elected to the office of member of the
board of education within and for the said district.

*Reversed and remanded.*