## LOUIS LIPPMAN

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 24, 1898.*

1. CONSTITUTIONAL LAW—*special legislation—essentials of law applicable to particular class.* A law may be general though it applies only to a particular class of persons, but it is essential that the classification be made so general as to bring within its limits all persons who are substantially in the same situation.

2. SAME—*general words following specific ones are limited in application.* The words "other beverages," used in the Trade-mark act of 1873, (Rev. Stat. 1874, p. 1084,) following the words "ale, porter, lager beer, soda" and "mineral water," include only beverages of the same kind or class described by those particular antecedent terms.

3. SAME—*Trade-mark act of 1873 is a special law.* The Trade-mark act of 1873, for the protection of "manufacturers, bottlers and dealers in ale, porter, lager beer, soda, mineral water and other beverages, from the loss of their casks, barrels, kegs, bottles and boxes," is a special law, granting exclusive privileges in violation of the last two clauses of section 22 of article 4 of the constitution.

4. SAME—*constitutional provision concerning search warrants construed.* Section 6 of article 4 of the constitution, providing that no search warrant shall issue without probable cause, supported by affidavit, requires the affiant to state facts sufficient to satisfy the magistrate that probable cause exists for issuing the warrant.

5. SAME—*search warrants—mere belief of affiant cannot be substituted for discretion of magistrate.* An act which attempts to substitute the mere belief of the owner of property or of his agent that probable cause exists for issuing a search warrant, for the judicial discretion of the magistrate, and which authorizes a warrant to issue without a showing of facts, but upon mere belief or suspicion of the affiant, is unconstitutional.

6. SAME—*what an unreasonable search, within meaning of constitution.* A search is unreasonable, within the meaning of the constitution, the object of which is to enable an individual, who has scattered his property abroad, to search the premises of parties suspected of using such property without written consent, in order to regain the same, and thus collect evidence leading to prosecutions.

7. SAME—*Trade-mark act of 1873 is unconstitutional.* The Trade-mark act of 1873 (Rev. Stat. 1874, p. 1084,) is violative of section 22 of article 4 of the constitution, concerning special legislation, and of section 6 of article 2 of the constitution, concerning unreasonable searches and seizures.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

ZOLOTKOFF & ZOLINE, (JOHN F. GEETING, of counsel,) for plaintiff in error:

If two statutes are clearly repugnant to one another, the one last enacted operates as a repeal of the former. *Trustees v. Chicago,* 14 Ill. 334; *Andrews* v. *People,* 75 id. 605.

Section 22 of article 4 of the constitution prohibits the passage by the General Assembly of local or special laws by which any corporation, association or individual might be granted any special or exclusive privilege, immunity or franchise whatever. Special legislation is prohibited in all cases where the general law can be made applicable. The act of 1873, to protect manufacturers of ale, etc., upon which this prosecution is based, was passed in violation of the said constitutional provision. A search warrant is not allowed to issue for the purpose of collecting evidence of an intended crime, but only after evidence of an offense committed. Cooley's Const. Lim. 299.

Unreasonable searches and seizures, and laws and ordinances to that effect, are condemned in *Sullivan* v. *Oneida,* 61 Ill. 242.

An arbitrary act of the legislature taking the property of one and giving it to another is not "due process of law." "Due process of law" means the due course of legal proceedings according to those rules and forms which have been established for the protection of private rights. *Board of Education* v. *Bakewell,* 122 Ill. 399.

Class legislation cannot be successfully defended on the theory of police power of the State, because the legislature, in the exercise of the police power, cannot prescribe that which is not necessary to the health, safety or welfare of the public and is oppressive to the private citizen. *Railway Co.* v. *Jacksonville,* 67 Ill. 37.

An affidavit is a statement of facts reduced to writing with that degree of clearness and positiveness that

if falsely made the affiant may be held guilty of perjury. *Myers* v. *People*, 67 Ill. 503; *Ex parte Dimmig*, 74 Cal. 164; *People* v. *Heffron*, 53 Mich. 527; *Ex parte Lane*, 6 Fed. Rep. 34; *Miller* v. *Munson*, 34 Wis. 579; *Peers* v. *Carter*, 4 Litt. 269; *People* v. *Becker*, 20 N.Y. 354; *Neal* v. *Gordon*, 60 Ga. 112.

The statute now under consideration simply requires the complainant to make the general statement "that he has reason to believe, and does believe, that any manufacturer * * * is using, in any manner," etc. (sec. 4 of act,) and in that regard not only falls short of but is in violation of the constitutional requirement. The statute attempts to transfer the judicial discretion from the judicial officer to the complainant, and permits the complainant to pass upon the question of probable cause. This class of supposed affidavits is universally condemned, both in civil and criminal practice, when used to disturb a citizen in his constitutional security. *People* v. *Heffron*, 53 Mich. 527; *Ex parte Dimmig*, 74 Cal. 164; *Hart* v. *Grant*, 66 N.W. Rep. 322; *Ex parte Lane*, 6 Fed. Rep. 34; *United States* v. *Collins*, 79 id. 65; *Shaw* v. *Ashford*, 68 N.W. Rep. 281; *Thomson* v. *Higginbotham*, 18 Kan. 42; *Atchison* v. *Bartholow*, id. 104; *Claflin* v. *Bears*, 57 How. Pr. 78; *Bank* v. *Loachemis*, 8 N.Y. Supp. 520; *Thompson* v. *Best*, 4 id. 229.

E. C. AKIN, Attorney General, (D. C. HAGLE, C. A. HILL, and E. S. CUMMINGS, of counsel,) for the People:

The repeal of an act by implication is never permitted if it can be avoided upon any reasonable hypothesis. *Butz* v. *Kerr*, 123 Ill. 659; *County of Cook* v. *Gilbert*, 146 id. 268; *Trausch* v. *County of Cook*, 147 id. 534.

A subsequent general law will not, by implication, operate as a repeal of a special law on the same subject, though inconsistent with it. *County of Cook* v. *Gilbert*, 146 Ill. 268; *Butz* v. *Kerr*, 123 id. 659; *Trausch* v. *County of Cook*, 147 id. 534.

A law is general if it applies to all persons in the State similarly engaged. *Hawthorn* v. *People*, 109 Ill. 302; *People*

v. *Hazelwood,* 116 id. 319; *Vogel* v. *Pekoc,* 157 id. 339; *People*
v. *Cohn,* 149 id. 486; *People* v. *Cannon,* 139 N. Y. 32.

Section 6 of article 2 of the constitution does not pro-
hibit all searches and seizures, but only such as are un-
reasonable; and the plain application therefrom is, that
a search warrant may issue if it is for a reasonable search
and seizure, and is based upon probable cause, supported
by an affidavit particularly describing the place to be
searched and the person or things to be seized. *Gindrat*
v. *People,* 138 Ill. 103; *Glennon* v. *Britton,* 155 id. 232; *Lang-
don* v. *People,* 133 id. 382.

Laws with reference to search warrants, which pro-
vide for search for stolen property or other articles ille-
gally kept, requiring that such property and the person
in whose possession it is found shall be brought before
the justice, are not unconstitutional, as working depri-
vation of property without due process of law. *Glennon*
v. *Britton,* 155 Ill. 232.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the
court:

On the affidavit of John A. Carey, agent of the Gott-
fried Brewing Company, a warrant was issued by a jus-
tice of the peace of Cook county, directed to all sheriffs,
coroners and constables of this State, commanding them
to search the premises of the plaintiff in error for four
hundred beer bottles, and forty casks, barrels, kegs and
boxes, having the marks of said company on them, and
if the same or any part thereof should be found upon such
search, to bring the same before the justice, and arrest
the plaintiff in error and bring him also before the said
justice, to be disposed of according to law. Return was
made on the warrant by the constable who executed it,
that he found twenty-seven bottles marked "Gottfried
Brewing Co." and he brought the same before the court
and arrested plaintiff in error and brought him also. The
prosecution was instituted under an act entitled "An act

to protect manufacturers, bottlers and dealers in ale, porter, lager beer, soda, mineral water and other beverages, from the loss of their casks, barrels, kegs, bottles and boxes." (Rev. Stat. chap. 140, entitled "Trade-marks.") Plaintiff in error was found guilty and fined. He appealed to the criminal court of Cook county, and at the trial there, the following facts were agreed upon: The Gottfried Brewing Company is a corporation, organized for the purpose of brewing beer. It complied with the provisions of said act by filing in the office of the Secretary of State and in the office of the county clerk of Cook county a description of the names and marks on its bottles and boxes, and by publishing the same. On the bottles are the words "Gottfried Brewing Co., Chicago, Ill." and "This bottle is never sold," or "Golden Drop" and "Gottfried Brewing Co., Chicago," cast or blown in the glass. The words "Gottfried Brewing Co.'s Golden Drop Beer, Chicago, Tel. South 429," are stamped or marked on the boxes. The defendant is a bottler of lager beer in Chicago, and on July 2, 1894, filled with lager beer twenty-seven bottles so marked. It was proved that he did not have the written consent of the brewing company to make such use of the bottles. He was again convicted and fined $13.50 and costs, and sued out the writ of error in this case to review the proceedings.

It is conceded that defendant violated the provisions of the act under which he was prosecuted, but it is claimed that the act is unconstitutional, and the case is brought here direct from the trial court on that ground. The provisions of the constitution which it is claimed are violated by the enactment are section 22 of article 4, which prohibits the General Assembly from passing a special law granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever, or in any other case where a general law can be made applicable, and section 6 of article 2, which protects the right of the people to be secure in their persons,

houses, papers and effects against unreasonable searches and seizures.

The act in question applies only to manufacturers, bottlers and dealers in ale, porter, lager beer, soda, mineral water and other beverages. The term "other beverages," under the settled rule of construction, includes only beverages of the same kind or class as the particular antecedent terms of description employed in the act. The object of the act, as gathered from its provisions, is to protect and benefit that class of persons. It gives to them the exclusive right to register the names and marks of ownership, stamped or marked on their casks, barrels, kegs, bottles or boxes, and gives to them the exclusive privileges and protection arising therefrom. It confers upon them the power to call upon the State and its officers and judiciary to act as collectors of their bottles, kegs and boxes which they have voluntarily scattered over the State among their customers. It attempts to place at their disposal the extraordinary right of the search warrant, by which they may arm a constable or other officer with process to intrude upon the premises or the home of any citizen to recover their bottles, kegs and the like. The object of the act is not only evident from its provisions but also from its title, where the legislature is required to express its general purpose, and which they have expressed as follows: "An act to protect manufacturers, bottlers and dealers in ale, porter, lager beer, soda, mineral water and other beverages, from the loss of their casks, barrels, kegs, bottles and boxes."

While, perhaps, no precise and comprehensive definition of the word "privilege," as used in constitutions, has been attempted, the right to employ remedies for the collection of debts, the recovery of property and the enforcement of rights has always been included in the term as used in the Federal constitution. It seems that the peculiar benefits, advantages and rights conferred by this act upon the persons named in it, and the right to employ an

unusual remedy for the recovery of their property, must be classed as privileges,—and this does not seem to be denied in the argument. It is argued, however, that the law conferring these privileges is not a special but a general one, because it applies to all persons similarly situated. General laws have been defined to be those which relate to or bind all within the jurisdiction of the law-making power, while a special law is limited in the object to which it applies. It is. often the case, however, that the rights and protection given by a law cannot be enjoyed by every citizen by reason of the subject to which the law relates. If the law is general, and uniform in its operation upon all persons in like circumstances, it is general in a constitutional sense, but it must operate equally and uniformly upon all brought within the relation and circumstances for which it provides. On the other hand, if it is limited to a particular branch or designated portion of such persons, it is special. (*People* v. *Wright*, 70 Ill. 388; *People* v. *Cooper*, 83 id. 585; *Hawthorn* v. *People*, 109 id. 302.) Although general in its character, a law may, from the nature of the case, extend only to particular classes, such as minors, married women, laborers, bankers or common carriers. Such a law is not obnoxious to the provisions of the constitution if all persons of the class are treated alike under similar circumstances and conditions, but it is not a proper application of the definition to say that a law is general because it applies uniformly to all persons in the conditions and circumstances for which it provides, although only a particular branch of a class or some particular description of persons. If an act should attempt to confer privileges only on persons of a certain stature it could be said to apply uniformly to all people answering such description, and yet it would be absurd to say that such a law would be a general one. The classification must be so general as to bring within its limits all those who are in substantially the same situation or circumstances.

This act singles out one branch of a class of manufacturers and dealers who may have occasion to use, or who do use in their business, bottles, barrels, kegs or other packages for their goods. It selects those whose particular manufacture or stock consists of certain varieties of drink. No other person who manufactures any product or sells it in casks, barrels, kegs, bottles or boxes can avail himself of the privilege of registering his trademarks or of the consequent protection, but the act denies to him the privileges afforded to those named in the act. The grocer, farmer, fruit dealer, merchant, druggist or other dealer or manufacturer cannot avail himself of the privileges or remedy afforded by this act to protect himself against the loss of his property under the same circumstances. The purpose of this act, passed in behalf of the persons named in it, is not to recover bottles stolen, embezzled or fraudulently obtained by false tokens or pretenses, but to make the proceedings under it, as to such persons, a substitute for the action of replevin. The general search warrant law of the State covers all the cases just mentioned, and was on our statute book when this act was passed. There are, and were, general laws in force, applicable uniformly to all persons in the State, for the recovery of personal property wrongfully obtained by another. This law was needless for that purpose, and it could only have been passed to give to the particular persons named in it additional privileges by making the criminal law supersede the writ of replevin. The plain purpose of the act is to make the officers of the State detectives, searchers for and collectors of beer bottles, beer kegs and the like. It is for a mere private benefit, having no relation to the police power or the protection of the public against frauds or injurious preparations, since, if the brewer or dealer consents, the bottles or kegs may be re-filled with any sort of drink different from the marks and it will be no offense under the act, however injurious to the public. The citizen or the health officer can neither

institute a prosecution nor cause search to be made, but in either instance it must be by the owner or agent. The public has no rights under it, and neither the title nor any provision indicates any public purpose.

In the case of *Eden* v. *People*, 161 Ill. 296, the decision turned upon the provision of the bill of rights that no person shall be deprived of property without due process of law, but the question whether the act which was being considered violated that provision involved the question whether the act was a general, public law. It was conceded that the act prohibiting keeping open a barber shop on Sundays would be valid if of general and uniform application to all laborers, and the constitutionality of such a law is thoroughly established. The distinction was there pointed out that where legislation concerns laborers, and there is no reasonable ground of distinction or division into classes, the general class includes all laborers, and barbers being only a branch of that class, the law was not general. There is no difference in the application of the principle in the different cases, and the decisions cited in support of the claim that a law is general although applying only to a subdivision of a class do not support the claim. In *Hawthorn* v. *People*, *supra*, the act embraced all persons in the State brought within the relation defined by it, and it did not appear that there were any with similar rights or relations excluded from it. In *Cohn* v. *People*, 149 Ill. 486, the Trade-mark law of 1891 was held to be general, on the ground that it extended to every association, person and corporation within the State desiring to avail itself of its privileges. In *Vogel* v. *Pekoc*, 157 Ill. 339, the statute, which was held to be a general law, applied to all wage earners in the State, and did not attempt to select from that class any particular branch of such laborers. The law exempting the wages of a defendant who is the head of a family, to a certain amount, from garnishment, embraces all heads of families in the State. There is an exception to the Exemption law

where the claim is for the wages of a laborer or servant, but it includes every laborer and servant. There are laws giving to certain classes a special lien, but they are based on what has been deemed a reasonable ground of distinction,—that the material, services or keeping enhance the value of property or are necessary to existence. A mechanic's lien law has never distinguished between those who erect buildings of different kinds or different material, and, although uniform in application, such laws have always been regarded so far obnoxious, as conferring special privileges, that they are subject to strict construction. If this act is valid it would be equally so if its benefits were confined to brewers alone, or to the manufacturers of soda or the dealers in mineral waters. It would then, as it does now, embrace only a part of the manufacturers of or dealers in products which require the use of barrels, boxes or bottles. In conferring upon the persons named in the act the exclusive privileges given thereby, of which other citizens are deprived, the constitutional provision is violated.

Section 6 of article 2 of the constitution is as follows: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue without probable cause, supported by affidavit, particularly describing the place to be searched and the persons or things to be seized." Section 4 of the act in question provides as follows: "In case the owner or owners of any cask, barrel, keg, bottle or box so marked, stamped and registered as aforesaid, shall, in person or by agent, make oath in writing, before any justice of the peace or police magistrate, that he has reason to believe, and does believe, that any manufacturer or bottler of ale, porter, lager beer, soda, mineral water or other beverage, or any other person, is using, in any manner by this act declared to be unlawful, any of the casks, barrels, kegs, bottles or boxes of such person or his principal, or that

any junk dealer or dealer in casks, barrels, kegs, bottles or boxes, or any other dealer, manufacturer or bottler, has any such cask, barrel, keg, bottle or box secreted in, about or upon his, her or their premises, the said justice of the peace or police magistrate shall issue his search warrant and cause the premises designated to be searched as in other cases where search warrants are issued, as is now provided by law; and in case any such cask, barrel, keg, bottle or box, duly marked or stamped and registered as aforesaid, shall be found in, upon or about the premises so designated, the officer executing such search warrant shall thereupon arrest the person or persons named in such search warrant, and bring him, her or them before the justice of the peace or police magistrate who issued such warrant," etc.

The search warrant provided for can be issued only at the instigation of the owner of the property to be searched for, or his agent, and, as already shown, is to be employed merely for the maintenance of his rights by making the officers of the State searchers for his bottles, kegs, etc. The premises of a citizen cannot be intruded upon, under a search warrant, for any such private purpose. Bishop, in his work on Criminal Procedure, (vol. 1, sec. 716,) states the rule by quoting from the opinion in *Robinson* v. *Richardson*, 13 Gray, 454, as follows: "Search warrants were never recognized by the common law as processes which might be availed of by individuals in the course of civil proceedings or for the maintenance of any mere private right, but their use was confined to cases of public prosecutions instituted and pursued for the suppression of crime or the detection or punishment of criminals. Even in those cases, if we may rely on the authority of Lord Coke, their legality was formerly doubted; and Lord Camden said that they crept into the law by imperceptible practice. But their legality has long been considered to be established on the ground of public necessity, because without them felons and other malefac-

tors would escape detection." The record in this case illustrates the well understood purpose of the act as well as the manner of its prosecution. The complaint and warrant are each a printed form not intended to describe a particular offense, but made in advance to fit all cases, ready to be sworn to, without regard to the facts of particular cases. The property charged to be in the possession of the defendant and directed to be seized and brought before the court is a part of the printed matter, for use on all occasions. The printed complaint describes the property as "four hundred of said bottles and forty of said cases and boxes," and the warrant as "said forty casks, barrels, kegs, boxes and said four hundred bottles, or some part thereof." No wonder there should be a variance between such an affidavit or warrant and the facts of the particular case, as there was here.

This section of our constitution is identical with the fourth amendment to the constitution of the United States, except that it substitutes the word "affidavit" for "oath or affirmation." It is a step beyond the constitution of the United States, in requiring the evidence of probable cause to be made a permanent record in the form of an affidavit, otherwise it is the same. It has been uniformly held, wherever the question has arisen under a statute or constitution containing such provision, that the oath or affirmation must show probable cause arising from facts within the knowledge of affiant, and must exhibit the facts upon which the belief is based, and that his mere belief is not sufficient. (*United States* v. *Tureaud,* 20 Fed. Rep. 621; *Johnson* v. *United States,* 87 id. 187.) The constitutional provisions on this subject had their origin in the abuse of executive authority, and their design is to substitute judicial discretion for arbitrary power, so that the security of the citizen in his property shall not be at the mercy of individuals or officers. The general statute authorizing search warrants, contained in the Criminal Code, fully recognizes this rule by the require-

ment that the judge or justice of the peace shall be satisfied that there is reasonable cause for the belief of the affiant, before he shall issue his warrant.   Wherever a statute requires probable cause, supported by oath or affirmation, the complaint must set up facts and cannot rest on mere belief, which will not satisfy the requirement. (*Blythe* v. *Tompkins*, 2 Abb. Pr. 468; *People* v. *Heffron*, 53 Mich. 527; *Ex parte Dimmig*, 74 Cal. 164.)   A search warrant can only be granted after a showing made before a magistrate, under oath, that a crime has been committed, and the law, in requiring a showing of probable cause, supported by affidavit, intends that facts shall be stated which shall satisfy the magistrate that suspicion is well founded.·  The mere expression of opinion, under oath, is no ground for the warrant, except as the facts justify it. (Cooley's Const. Lim.—4th ed.—372.) "The warrant is not allowed to obtain evidence of an intended crime, but only after lawful evidence of an offense actually committed." (Ibid. 374.)   The act now under consideration does not even require an affidavit that any offense has been committed, and an affidavit which fulfills its conditions belongs to a class universally condemned by every authority, when used to disturb a citizen in the security guaranteed him by the constitution.   It requires nothing but the belief of the party making the affidavit, and, as he is not required to state any fact or satisfy the magistrate that there is reasonable ground for his belief, he may just as well swear by wholesale, according to the printed form, to four hundred bottles and forty kegs as to his affidavit to the facts of a particular case.   The act attempts to transfer the judicial discretion, which the constitution intended should be exercised by the magistrate, from that officer to the party making the affidavit.   The vesting of such discretion in the magistrate has been the main purpose of constitutional provisions of this character, while this act destroys the protection secured and permits the affiant to pass upon the question of probable cause.

The search warrant appears to be intended as a means of collecting evidence. The act not only avoids the requirement of an affidavit that any crime has been committed, but it only provides that the party accused shall be arrested in case beer bottles, or other property described in the act, is found about his premises, and when such property is brought before the court the act makes no provision for the disposition of it. It is only after a search by the officer for bottles, kegs and the like that he learns whether he is to arrest the defendant or not, and if he fails to find them no arrest is to be made. This shows that the object of the search warrant is to obtain evidence, and if it is not obtained that is the end of the prosecution. Such a search is an unreasonable one. In *Glennon* v. *Britton,* 155 Ill. 232, the proceeding was against the offending thing itself, where the public was interested in its destruction for the purpose of stopping immoral practices and crime, and it was immaterial whether service was had on the person in whose possession it might be found. There is no such element in this case, but the only purpose is to aid the individual to collect his property. The search provided for in the act is unreasonable, under the authorities, for the reasons we have given, and the provision is in violation of the constitution.

These questions were neither considered nor decided in *People* v. *Cannon,* 139 N. Y. 32, which is the main reliance of counsel to sustain this act. The New York statute is much more comprehensive than this act, and includes dealers in milk and cream and manufacturers and dealers in medicines, medical preparations, perfumery and compounds or mixtures, as well as those embraced in the terms of this act. The validity of that statute was tested on the claims that it granted a monopoly to the manufacturers of beverages by prohibiting the re-sale or gift by a purchaser of the contents of a bottle which the manufacturer refused to sell, and that it destroyed or unlawfully decreased the trade in empty bottles, which is

a legitimate trade and entitled to the equal protection of the law. The statute was held not subject to the first objection, and it was said that a buyer of the contents could sell the same in the bottle and deliver the bottle with the contents. As to the second objection, it was held that the additional care required of a dealer in buying empty bottles was not an unreasonable restriction. The statute only applied where the bottle was not purchased with the contents from the person or corporation whose trade-mark was on it, and in the three cases heard together the judgments in two were reversed because there had been deposits of money as security for the return of the bottles, which amounted to a conditional sale of them. The decision is not an authority on any proposition in this case.

The judgment is reversed.                          *Judgment reversed.*