HIRSH HORWICH *et al.*

*v.*

THE WALKER-GORDON LABORATORY COMPANY.

*Opinion filed October 26, 1903—Rehearing denied December 9, 1903.*

1. CONSTITUTIONAL LAW—*what necessary to sustain act by reference to police power.* To sustain an act as referable to the police power of the State, it must appear that it tends in some degree toward the prevention of offenses or the preservation of the public health, morals, safety or welfare.

2. SAME—*legislature cannot make an innocent act criminal where the police power is not involved.* The legislature cannot, under cover of the police power of the State, make the purchase of a receptacle bearing a registered trade-mark, without the written consent of the original owner, a criminal act.

3. SAME—*section 2 of the Trade-mark act of 1901 is unconstitutional.* Section 2 of the Trade-mark act of 1901, (Laws of 1901, p. 317,) is unconstitutional, as granting to owners of the specific class of personal property named in the act, rights and privileges not possessed by owners of other personal property.

4. SAME—*what is necessary to sustain legislation in favor of a class.* Legislation in favor of a class is not prohibited by the constitution, provided the class is composed of individuals possessing in common some disability, attribute or qualification which marks them as proper objects of legislative favor.

5. SAME—*section 3 of Trade-mark act of 1901 is invalid.* Section 3 of the Trade-mark act of 1901, making the possession, by any junk dealer, of receptacles bearing registered trade-marks *prima facie* evidence that such possession is unlawful, is unconstitutional, as making an unwarranted distinction between junk dealers and other persons, rendering it possible to convict the former on evidence which would not warrant the conviction of the latter.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

205—32

This is a bill for an injunction, brought by the Walker-Gordon Laboratory Company in the superior court of Cook county, to restrain the plaintiffs in error from buying, selling, keeping for sale, trafficking in or having in their possession or control for the purposes of sale, any of the bottles of such company upon which are contained the words "Walker-Gordon Laboratory," "Registered," and the figure of a basket containing bottles, all blown in the glass of the bottle. The action is based upon the sixth section of the act entitled "An act to prevent and punish the unlawful buying, selling, keeping for sale, using, filling or trafficking in cans, tubs, firkins, boxes, bottles, casks, barrels, kegs, cartons, tanks, fountains, vessels or containers; to provide for the registration of the names, brands, designs, trade-marks, devices, and other marks of ownership in connection with such articles, and to protect the owners thereof," approved May 11, 1901, in force July 1, 1901. (Hurd's Stat. 1901, p. 1793.) An answer was filed by plaintiffs in error to the bill, averring, among other things, that the act under which the proceeding is brought is unconstitutional. A stipulation of facts was entered into between the parties. The cause was heard by the court upon the pleadings and stipulation of facts, no evidence other than the stipulation being taken.

The stipulation of facts recites that the defendant in error is a corporation organized under the laws of New Jersey and doing business in the State of Illinois, with its principal place of business in the city of Chicago; that it is engaged in the business of furnishing milk to the residents of Chicago and adjacent territory; that by reason of exceptional care its milk is of superior quality to other milk, enjoys a better reputation and brings a higher price on the market; that it is put up in bottles bearing the words "Walker-Gordon Laboratory," "Registered," and the figure of a basket containing bottles, all blown in the glass of the bottle; that the milk is sold

only from wagons of the company and by one or two milk dealers, who act specifically as agents of the company; that the bottles are never sold, but are furnished to the consumers and are collected by agents of the company after the milk placed in them has been used; that the company has complied in all respects with section 1 of said act, and has filed the statements, and published the same, as therein required; that bottles bearing these words and design had been in use by defendant in error for a number of years prior to the passage of the act, and many of them were out of its possession at the time the act was passed; that it is impossible to distinguish the bottles manufactured after the passage of said act from those manufactured before its passage, for the reason that they have never been kept separate; that the plaintiffs in error are engaged in the business of buying and selling bottles in the city of Chicago and have been so engaged for more than ten years; that they purchase bottles at wholesale from bottle factories and bottle dealers generally, also from rag-pickers, peddlers and second-hand dealers, in miscellaneous lots; that most of those purchased from rag-pickers and peddlers are obtained by going from house to house and purchasing them with junk and cast-off articles; that many bottles so purchased are found in the city dumps and sold in indiscriminate lots; that the bottles are afterwards sorted by plaintiffs in error with reference to size and use, and sold to persons engaged in lines of business for which the bottles are adapted; that bottles bearing the name and mark of ownership of said company have been obtained by plaintiffs in error in the manner above set forth, and have been sold in the usual course of business, since the passage of said act and the compliance of defendant in error therewith.

The court rendered a decree in conformity with the prayer of the bill, enjoining the plaintiffs in error from directly or indirectly buying, selling, keeping for sale,

trafficking in or having in their possession or under their control for the purpose of sale, any of the bottles of said company with the name and design above mentioned upon them.   The case comes to this court by writ of error.

Elijah N. Zoline, and H. R. Platt, for plaintiffs in error:

The Trade-mark act of 1901 is unconstitutional for the following reasons: It embraces more than one subject and its title does not properly express its subject. *Bailey* v. *People*, 190 Ill. 28; *Kennedy* v. *LeMoyne*, 188 id. 259.

It is class legislation.   *Lippman* v. *People*, 175 Ill. 101; *Chicago* v. *Netcher*, 183 id. 110.

The act infringes vested rights, and by its terms destroys property rights accrued prior to its enactment. *Wynehamer* v. *People*, 13 N. Y. 378; *City* v. *Cochran*, 82 Ky. 15; *People* v. *Hawkins*, 31 N. Y. Sup. 115.

The act amounts to an exercise of judicial power by the legislature in fixing the status of property without determination by the courts.   *Rozier* v. *Fagan*, 46 Ill. 404.

The act is an attempt to discriminate in favor of one class of citizens and against another, and to work oppressive favoritism under the guise of an exercise of the police power.   *Lippman* v. *People*, 175 Ill. 101; *Bessette* v. *People*, 193 id. 334; *Bailey* v. *People*, 190 id. 28; *Noel* v. *People*, 187 id. 587; *Allardt* v. *People*, 197 id. 501.

The act makes innocent acts criminal, which cannot be justified under the police power of the State.   *Gillespie* v. *People*, 188 Ill. 176.

E. S. Cummings, and Walker & Payne, for defendant in error:

If a law is general and uniform in its operation it is general, in a constitutional sense.   *Vogel* v. *Peacock*, 157 Ill. 339; *Hawthorn* v. *People*, 109 id. 302; *Booth* v. *People*, 186 id. 42; *People* v. *Hazelwood*, 116 id. 319.

The right of the courts to declare a statute void is one of grave responsibility, and is never exercised ex-

cept in very clear cases. *People* v. *Thompson*, 155 Ill. 465; *Harmon* v. *Chicago*, 140 id. 374; *Railway Co.* v. *Smith*, 62 id. 268; *Hawthorn* v. *People*, 109 id. 302.

The legislature has the power to do any legislative act not prohibited by the State or Federal constitution. *People* v. *Hill*, 163 Ill. 186; *Hawthorn* v. *People*, 109 id. 302; *People* v. *Hoffman*, 116 id. 587.

Courts will never declare a law unconstitutional unless it clearly violates some provision of the organic law. When a law is challenged as unconstitutional, the challenger must be able to turn to the provision of the instrument which prohibits the legislature from its enactment, and the repugnancy must clearly appear. *People* v. *Salomon*, 51 Ill. 49; *Field* v. *People*, 2 Scam. 79; *People* v. *Marshall*, 1 Gilm. 672; *Lane* v. *Dorman*, 3 Scam. 238; *Bruce* v. *Schuyler*, 4 Gilm. 221; *Mason* v. *Wait*, 4 Scam. 127; *Hawthorn* v. *People*, 109 Ill. 307.

Mr. Justice Scott delivered the opinion of the court:

Plaintiffs in error contend that the statute under which this proceeding is brought is unconstitutional, and in the view taken by this court it is unnecessary to determine any other question.

The first section of the act provides that the owners of cans, tubs, firkins, boxes, bottles, casks, barrels, kegs, cartons, tanks, fountains, vessels or containers, with his, her, its or their names, brands, designs, trade-marks, devices or other marks of ownership stamped, impressed, labeled, blown in or otherwise marked thereon, may register such names, brands, designs, trade-marks, devices or other marks of ownership, by filing a verified statement, containing a description thereof, with the Secretary of State and with the clerk of the proper county. Said section also provides for the publication of such statement, and for the filing of certificates of publication with the Secretary of State and county clerk. Certified copies of such statement are made *prima facie* evidence

of the title of the owner or owners named therein to the property upon which the name or other mark of ownership may appear, as the same is described in such copy. The second and third sections of the act read as follows, to-wit:

"Sec. 2. It is hereby declared to be unlawful for any person or persons or corporation, without the written consent of the owner or owners thereof, to hereafter keep for sale any can, tub, firkin, box, bottle, cask, barrel, keg, carton, tank, fountain, vessel or container so marked or distinguished as aforesaid, of which a description shall have been filed and published as provided in section 1 of this act, or to use or fill with any substance, commodity or product for the sale therein of such substance, commodity or product, any such can, tub, firkin, box, bottle, cask, barrel, keg, carton, tank, fountain, vessel, or container, or to wantonly break or destroy or to buy, sell or dispose of or traffic in any such can, tub, firkin, bottle, box, cask, barrel, keg, carton, tank, fountain, vessel, or container, or to deface, erase, obliterate, cover up or otherwise remove or conceal any such name, brand, design, trade-mark, device or other mark thereon, for the purpose of destroying or removing the evidence of the ownership of such article.

"Sec. 3. The using by any person or persons or corporation other than the owner or owners thereof, or his, her, its or their agent, of any such can, tub, firkin, box, bottle, cask, barrel, keg, carton, tank, fountain, vessel, or container, for the sale therein of any substance, commodity or product, other than that originally therein contained, or the buying, selling, or trafficking in any such can, tub, firkin, box, bottle, cask, barrel, keg, carton, tank, fountain, vessel or container, or the fact that any junk dealer or dealer in cans, tubs, firkins, boxes, bottles, casks, barrels, kegs, cartons, tanks, fountains, vessels, or containers, shall have in his or her possession any such can, tub, firkin, box, bottle, cask, barrel, keg,

carton, tank, fountain, vessel, or container, so marked or stamped, and a description of which shall have been filed and published as provided in section 1 of this act, shall be and it hereby is declared to be *prima facie* evidence that such using, buying, selling, or trafficking in or possession of is unlawful within the meaning of this act."

The fourth section fixes a penalty, recoverable at the suit of the People of the State of Illinois by summons, for the violation of any of the provisions of the act. The fifth section provides for the issuance of a search warrant upon the filing of a proper affidavit, and the sixth section, under which this proceeding is brought, provides, in substance, that any person may be enjoined from violating the second section of the act.

A somewhat similar statute was passed in 1873 (Rev. Stat. 1874, p. 1084,) and that statute was held by this court to be unconstitutional in *Lippman* v. *People*, 175 Ill. 101. The act of 1901 seems, from an examination thereof, to have been passed by the legislature with a view to obviate the constitutional objections to the earlier act but for the purpose of accomplishing the same results as were sought by the law of 1873.

It is argued by counsel for defendant in error that the purpose of the present act is to protect the public and manufacturers of food products from frauds and imitations and to prevent the public from being deceived in the use of adulterated foods. Neither the title nor the language of the act shows evidence of any such purpose. The law is entirely silent in regard to the quality of the commodity that may be sold in the receptacles by the owner or by the person to whom the owner may have given his written consent to use or buy the receptacle. There is no provision that the person who has purchased one of these receptacles with the written consent of the owner shall only put therein food products of as high a standard as those manufactured by the original owner of the receptacle, (by which term we designate the owner

whose registered mark of ownership appears on the receptacle,) or that the food placed therein shall be of any particular standard of purity. If, indeed, it was the purpose of the legislature by this statute to protect the public in the purchase of food, the legislature, instead of exercising the power itself, has delegated to the persons throughout the State who may see fit to register their names or other marks of ownership, as provided by the statute, the power to determine what is deleterious to the health of the public and what may or may not be sold in these receptacles after they have passed from the hands of the original owners, or such original owners may sell these receptacles or grant their use to others without any limitations whatever in regard to what shall thereafter be placed or sold therein.

We have examined this statute, in vain for the purpose of finding any evidence that it was intended by the legislature to apply particularly to food products. The only thing that could possibly be construed as any evidence on that score is the fact that it describes receptacles in which food might be sold; but it will be observed that in the list of these receptacles, cans, boxes, kegs and barrels are included in which gunpowder, boots and shoes, nails, lime, and an innumerable number of other articles of merchandise, are habitually enclosed and sold. A patient consideration of the provisions of this statute leads us to the conclusion that its purpose, like that of the earlier statute, was to facilitate the recovery of certain kinds of personal property, to-wit, the receptacles described in the first section of this statute, which have passed from the possession of the owners thereof to others and which the owners desire to recover summarily. The act is wholly for the benefit of the owners of personal property of this class, and is designed to give to the owners of personal property of this class rights and privileges not possessed by the owners of other classes of personal property.

It is argued that this law should be sustained under the police power of the State. It has been frequently said by this court that where a statute is referable to that power it must appear that it tends in some degree towards the prevention of offenses or the preservation of the public health, morals, safety or welfare. (*Toledo, Wabash and Western Railway Co.* v. *City of Jacksonville*, 67 Ill. 37; *Eden* v. *People*, 161 id. 296; *City of Chicago* v. *Netcher*, 183 id. 104; *Noel* v. *People*, 187 id. 587.) It cannot be contended that the selling or using of any of these receptacles in the manner prohibited by this statute, viz., without the written consent of the owner, is in any manner more injurious to the public health, morals, safety or welfare than if the same things be done with the written consent of the owner. The written consent of the owner is no guaranty to the public that any wrong which it is in the power of the purchaser, possessor or user of the receptacles in question to do to the public will not be done.

Under the second section it is unlawful to purchase from the owner thereof one of these receptacles bearing the registered mark without first or at the same time obtaining the written consent of the owner to make the purchase. It might, perhaps, be argued that such was not the legislative intent, but that the provision requiring the written consent was only intended to apply where the receptacle was purchased from some person other than the original owner thereof, and then was meant to require the written consent of such original owner; but it seems quite certain from an inspection of this enactment that the legislative purpose was to place the possessor of these receptacles in a position where he could not testify to a verbal consent given by the owner from whom he purchased, and thereby establish a defense, the purpose being to so fully protect the original owner whose registered marks of ownership appeared on the article, that he should have to meet no evidence except

evidence written by himself, if an issue upon the question of his consent arose.

In view of the fact that this statute does not come within the police power of the State, it is beyond the power of the legislature to make unlawful the purchase of one of these receptacles without the written consent of the owner from whom it was purchased. As was said by this court in *Gillespie* v. *People*, 188 Ill. 176, the legislature has no authority to pronounce the performance of an innocent act criminal, when the public health, safety, comfort or welfare is not interfered with.

An attempt is made to justify the prohibition of these acts without the consent of the owner by reference to the statute making it an offense for the mortgagor of chattels to sell the same without the written consent of the mortgagee. But in considering that argument the objects of the two statutes should be compared. The purpose of the statute requiring the written consent of the mortgagee was to prevent property in which he had an interest from being so disposed of that he would be hindered in enforcing his debt. That was intended as a protection to his property rights, while a provision that he who purchases from the mortgagor (or, as in this case, from the owner of the receptacle,) is guilty of a misdemeanor unless he has the written consent of the seller to make the purchase, is in nowise a protection to the property rights of the seller. The chattel mortgage statute is for the protection of the mortgagee, who is not a party to the sale and cannot protect himself. This statute is for the benefit of the owner, who is the seller, and who, being at no disadvantage and under no disability, needs no protection.

In Tiedeman on Limitations of Police Power, (p. 208,) in discussing police regulations established for detecting and preventing fraud, it is said: "Laws which provide for the inspection and grading of flour * * * are constitutional exercises of police power, so far as they

permit one party to compel the other to comply with the regulation, in the absence of their agreement to the contrary. For example, it is permissible for a statutory regulation to provide for standard weights and measures and to compel their use when the parties have not agreed upon the use of others, but it cannot be reasonable to prohibit the use of any other mode of measurement. It is an excessive exercise of police power when the law compels one to make use of the means provided for his own protection against fraud." There is no reason which can set the legislative police power of the State in motion for placing in a statute a provision that the seller or bailor must give to the buyer or bailee his written consent to buy or use an article of personal property sold or bailed. The manner in which the acquiescence of the seller or bailor in such a transaction shall be evidenced is wholly for the parties themselves.

There is no distinction in this act between receptacles of the class specified in the law which were in existence when the act became effective and such receptacles thereafter made or manufactured,—that is, by the terms of the law a receptacle then in existence bearing one of the marks of ownership specified in the law, which mark should thereafter be registered, would, together with the person then in possession thereof, whether the original owner or another, upon the registering of the mark become subject to the operation of this law, and in this case it is sought to make this law apply to bottles some of which may have been manufactured with the mark blown in them before the passage of the law and long before the mark was registered. In the judgment of the court this law granted to all persons who at the time of its passage owned receptacles of the specified kinds, whether in or out of the possession of the owner, bearing marks of ownership of the nature denominated in the statute, who afterwards registered those marks of ownership, and to all persons who thereafter registered such

marks of ownership and placed them upon any such receptacles acquired after the passage of the law, special and exclusive privileges, in that it vested them with rights for the recovery of personal property not enjoyed in common by all the owners of personal property in the State of Illinois. The language of this statute is much broader than that of the act of 1873, but it is still legislation in favor of a portion of the community only, namely, the portion that are the owners of receptacles named in the first section of the act. It is legislation in favor of the owners of personal property of a certain kind. There is no reason why the owners of personal property of the character named in this statute should be distinguished from or placed in a class apart from the owners of other personal property in this State.

In *Lippman* v. *People, supra,* this court emphasized the fact that in *Eden* v. *People,* 161 Ill. 296, in passing upon the validity of the act requiring barber shops to be closed on Sunday, the distinction was pointed out that where legislation concerns laborers, and there is no reasonable ground of distinction or division into classes, the general class includes all laborers, and as barbers were only a branch of that class the law was not general. So here, this legislation concerns the owners of personal property. It attempts to legislate for the benefit only of the owners of such personal property as is named in this act, and is therefore legislation conferring special rights and privileges upon a portion, only, of the owners of personal property. There is no reason that suggests itself to our minds, and none has been suggested by counsel, why such owners should be entitled to this special protection or why they should be considered a class by themselves, so that legislation for their benefit alone would not be obnoxious to the constitution. This act fails to meet the reasoning of this court as found in *Lippman* v. *People* in this regard.

Legislation in favor of a class is not prohibited, but the class must be composed of individuals possessing in

common some disability, attribute or qualification, or in some condition marking them as proper objects for legislative favor, as debtors and wage earners who are heads of families residing with the same, who have been given by our laws more liberal exemptions than are given to persons upon whom none are dependent. The conditions that make such wage earners and debtors the proper and lawful beneficiaries of legislation of this character readily occur to every one, and they are conditions which put such persons in classes easily distinguishable from the remainder of the community. No such reason can be found for considering persons owning receptacles of the character specified in this act as a class by themselves and singling them out as objects of special consideration at the hands of the law-maker. They stand on the same footing as other owners of personal property, and any law favoring them above others, for the reason, alone, that they own personal property of the kind specified in this act, is a special law, within the meaning of our constitution.

The third section of the act provides, among other things, that "the fact that any junk dealer or dealer in cans, tubs, firkins, boxes, bottles, casks, barrels, kegs, cartons, tanks, fountains, vessels, or containers, shall have in his or her possession" any such receptacles bearing a registered mark, shall be *prima facie* evidence that such possession is unlawful, within the meaning of this act. Such possession by others is given no such effect by this statute. Dealers of the kind mentioned in the quoted language are merchants. An empty paste-board shoe box found in the residence of one whose business is the manufacture and sale of tubs, casks, kegs and barrels, bearing a registered mark, would be *prima facie* evidence that he had violated this law, and if he were unable to explain his possession would warrant his conviction, while if the same box bearing the same mark were found in the residence of his next door neighbor

who is a grocer, it would be no evidence at all of any violation of this statute. This is an unlawful discrimination against persons dealing in receptacles of the specified class and confers a special privilege or immunity upon all other persons. It makes that evidence against one which is not evidence against another. The legislature is without power to make any such arbitrary distinction. In the case of *Mathews* v. *People*, 202 Ill. 389, the following language from Cooley on Constitutional Limitations is quoted with approval (p. 402): "A statute would not be constitutional * * * which should select particular individuals from a class or locality and subject them to peculiar rules, or impose upon them special obligations or burdens from which others in the same locality or class are exempt. * * * Everyone has a right to demand that he be governed by general rules, and a special statute which, without his consent, singles his case out as one to be regulated by a different law from that which is applied in all similar cases would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free governments." The same doctrine is announced in *Millett* v. *People*, 117 Ill. 294, *Harding* v. *People*, 160 id. 459, and *Gillespie* v. *People*, 188 id. 176. We therefore conclude that in making it possible to convict junk dealers, and dealers in receptacles of the class mentioned in the statute, on evidence that would not warrant the conviction of other persons, the legislature has made an unwarranted and unconstitutional distinction between such dealers and other persons.

Defendant in error relies upon the case of *People* v. *Cannon*, 139 N. Y. 32, as an authority for upholding the validity of this statute. In that case the validity of a New York statute entitled "An act to protect the owners of bottles, boxes, syphons and kegs used in the sale of soda waters, mineral and aerated waters, porter, ale, cider, ginger ale, milk, cream, small beer, lager beer,

weiss beer, beer, white beer or other beverages," was considered by the court. That statute is materially different from the statute we have under consideration, but it is sufficient to say that in that case so relied upon by defendant in error the points that the statute there under consideration granted any special or exclusive privileges or immunities, and that such statute was invalid because it made unjust discriminations between members of the same class in the community, were neither made nor considered.

The statute in question in the case under consideration here is in contravention of section 22 of article 4 of our constitution of 1870. The decree of the superior court of Cook county will therefore be reversed and this cause will be remanded to that court, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*