## STATE OF INDIANA *v.* WIGGAM.

[No. 23,167. Filed February 19, 1918.]

1. CONSTITUTIONAL LAW. — *Power of Legislature.* — The legislature may pass any law, so far as the state Constitution is concerned, that is not prohibited by that instrument. p. 161.

2. CONSTITUTIONAL LAW.—*Classification.—Judicial Question.*— There must be a reason based on the public health, public morals or public welfare for a classification in an act passed by the legislature; and whether the classification is reasonable is a judicial question. p. 161.

3. TRADE MARKS AND TRADE NAMES.—*Statutes.—Construction.— Ejusdem Generis.—"Other."*—In §§10435-10439 Burns 1914, Acts 1903 p. 282, relative to trade marks on bottles, syphons, cans, etc., the words, "other enclosures made of glass, metal or wood," are limited to containers of the classes first enumerated; and persons manufacturing or selling anything in jugs, jars, pails, or enclosures made of earthenware, rubber, pasteboard or strawboard could not be protected by complying with the act. pp. 162, 163.

4. CONSTITUTIONAL LAW.—*Trade Marks and Trade Names.— Privileges and Immunities.—Classification.—*The classification made in §§10435-10439 Burns 1914, Acts 1903 p. 282, relative to the protection of trade marks on bottles, syphons, cans, etc., to the exclusion of jugs, jars, pails, or refillable enclosures

made of earthenware, rubber, pasteboard or strawboard, is arbitrary and violates Art. 1, §23, of the Constitution, which guarantees equal privileges and immunities to all citizens, and also Art. 4, §§22, 23, forbidding the passage of local or special laws where general laws can be made applicable, and requiring laws to be of general and uniform application. p. 164.

From Marion Criminal Court; (45526); *James A. Collins,* Judge.

Prosecution by the State of Indiana against Julian C. Wiggam. From a judgment quashing the affidavit, the state appeals. *Affirmed.*

*Evan B. Stotsenburg,* Attorney-General, *Alva J. Rucker, Joshua E. Florea* and *Martin M. Hugg,* for the state.

*Charles S. Wiltsie* and *Alexander G. Cavins,* for appellee.

TOWNSEND, J.—Appellee was charged by affidavit with violating §5 of what is commonly known as the Bottling Act. Acts 1903 p. 282, §10439 Burns 1914. The affidavit was quashed because the act was considered unconstitutional. Appellee contends that it violates the following provisions of the Constitution: "The general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." Art. 1, §23. "The general assembly shall not pass any local or special laws in any of the following enumerated cases, that is to say: * * * For the punishment of crimes and misdemeanors." Art. 4, §22. "In all cases enumerated in the preceding section, and in all cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the state." Art. 4, §23.

It is fundamental that a state constitution is a limit of power; that is to say, the legislature may pass any

law, so far as the state Constitution is concerned, except such as are prohibited by this instrument. The legislature must classify in nearly every act which it passes, but there must be a reason for the classification based on the public health, public morals or public welfare. What is reasonable must be a judicial question; otherwise the limitations in the Constitution are meaningless and the legislature is omnipotent in the legislative field. In determining whether the above provisions of the Constitution have been violated, it is the duty of this court to be circumspect to detect reasons concerning the public health, public morals or public welfare, which the legislature had in mind. The "privileges and immunities" section, the "class" section and the "general law" section are not violated, if the act is reasonably designed to protect the health, morals or welfare of the public. With these rules in view, we shall now consider the act in question.

Section 1 (§10435 Burns 1914) provides that "any person, company, firm, corporation or association * * * engaged in the business of manufacturing or vending anything sold in bottles, syphons, cans, kegs, barrels, hogsheads or other enclosure made of glass, metal or wood, upon which his, their or its initials, name or names, mark or marks, trademark or trademarks, shall be respectively impressed, stamped, marked or blown for the purpose of protecting the ownership of such bottles," etc., may publish and record such name or mark. Section 2 (§10436 Burns 1914) provides that the taking of "money or security of any kind for the return" of such property, or "the entering into an agreement or arrangement for the return" of such property, or "the payment of an equivalent if not returned shall not be deemed to constitute a sale * * *

nor deprive such person  *  *  *  of ownership in, or title to," such property. Section 3 (§10437 Burns 1914) provides that "possession" of such property "shall be deemed to be *prima facie* evidence of an intention to unlawfully fill or cause to be filled, sell or cause to be sold, buy or cause to be bought, dispose of or cause to be disposed of, traffic in or cause to be trafficked in, wantonly destroy or cause to be wantonly destroyed" such property, "unless such possession was obtained with the written consent," of the owner or such property was "purchased" from such owner. Section 4 (§10438 Burns 1914) provides for search warrant and seizure and is not involved in this decision. Section 5 (§10439 Burns 1914) provides that it is "unlawful hereafter for any person  *  *  *  without the written consent of the owner or owners thereof, to fill or cause to be filled (any of these enclosures belonging to a person who has complied with §1, *supra*) with anything for sale or with anything that will interfere with the use thereof by the owner thereof, or to sell, cause to be sold, dispose of or cause to be disposed of, buy or cause to be bought, with the intent to defraud the owner or owners of such bottle or bottles, syphon or syphons, can or cans, keg or kegs, barrel or barrels, hogshead or hogsheads  *  *  *  not purchased from the owner," etc.  This section then provides for a fine of one dollar for each bottle, syphon, can, keg, etc., filled or caused to be filled, sold or caused to be sold, etc., with intent to defraud the owner.

By a familiar rule of construction, the words "other enclosures made of glass, metal or wood" are limited to those of the classes "bottles, syphons, cans, kegs, barrels, hogsheads." *Wiggins* v. *State* (1908), 172 Ind. 78, 87 N. E. 718, and cases there cited. Therefore, persons "manufacturing or vending anything sold" in boxes, jugs, jars, pails, tubs,

racks, trays, crates or refillable enclosures made of earthenware, rubber, pasteboard or strawboard, could not be protected by complying with this act.

The state contends that this act is designed to protect the public against fraud in the use of containers bearing a name or trademark. But it is not shown that the public may be protected if the owner gives his "written consent" or "sells" the containers to another. The person buying them, or obtaining such consent, may, so far as this act is concerned, defraud the public all he pleases. The state says that this act also protects the public health against inferior food products. "Cans, kegs and barrels" may contain nails, dynamite or lime. So far as this act is concerned, the person who complies with it may build up a reputation for a superior product and collude with another to defraud the public by filling the containers with an inferior food or drink or anything else that they are designed to hold. A person who sells food or drink in a jug, jar or pail, or any refillable container made of earthenware, cannot be protected by this act. A box made of wood and glass is not protected. A crate made of wood and pasteboard or strawboard is not protected. Cheese, one of the best food products, is frequently sold in crockery or earthenware containers. This act does not protect the owners of such containers.

The state also contends that there is a public demand, and, therefore, a public necessity for such a law, and, in support of this, calls our attention to the fact that thirty states have passed similar laws. This makes us circumspect to detect reasons for such laws, but does not convince us that this was not brought about by the pernicious activity of the selfish. It may also be true that this very law would be valid under other state constitutions. It must not be forgotten that state constitutions differ in their provisions.

Acts, similar to this one, have been passed upon by the courts of Massachusetts, New York, Kentucky, Illinois, Ohio and Missouri. The state relies on *People* v. *Cannon* (1893), 139 N. Y. 32, 34 N. E. 759, 36 Am. St. 668; *Commonwealth* v. *Anselvich* (1904), 186 Mass. 376, 71 N. E. 790, 104 Am. St. 590; *Commonwealth* v. *Goldburg* (1915), 167 Ky. 96, 180 S. W. 96. The New York case decided that the act did not create a monopoly and that the *prima facie* evidence provision in the act was not an unreasonable invasion of the province of the court and the jury. No other questions were presented. Besides, a search of the New York Constitution does not disclose limitations upon the legislature like those in our Constitution. The Massachusetts case held a similar act valid. We have searched the Constitution of that state for limitations similar to our own and find none. The Kentucky case follows the Massachusetts case, apparently without examining or considering the constitutional provisions by which the Massachusetts court and legislature were controlled.

On the other hand, Illinois, Ohio and Missouri, with constitutional limitations practically like ours, have held acts like the one in question void. We are convinced that an act like this, under the prohibitions in our Constitution, cannot stand. There is no reason in health, morals or welfare of the public for this act. A casual reading of the act shows that it is to protect the owners of these enclosures. The owner of a jug, made of earthenware, in which anything is sold, must protect his trademark by injunction, must regain his property by replevin or prosecute for larceny or embezzlement; but one who has his name blown in a bottle may have all of these remedies and those of the act in question added. This classification is arbitrary and violates every provision of our Constitution above set out. We need not further elaborate

this opinion. The following cases go exhaustively into the subject and are squarely in point: *Horwish* v. *Walker-Gordon Laboratory Co.* (1903), 205 Ill. 497, 68 N. E. 938, 98 Am. St. 254; *Lippman* v. *People* (1898), 175 Ill. 101, 51 N. E. 872; *State* v. *Schmuck* (1908), 77 Ohio St. 438, 83 N. E. 797, 14 L. R. A. (N. S.) 1128, 122 Am. St. 527; *State* v. *Baskowitz* (1913), 250 Mo. 82, 156 S. W. 945, Ann. Cas. 1915A 477.

The court was right in sustaining the motion to quash the affidavit and its judgment is affirmed.

NOTE.—Reported in 118 N. E. 684. Effect of legislation to protect manufacturers or dealers against loss of receptacles in which their products are put up, 14 L. R. A. (N. S.) 1128, L. R. A. 1915C 734. See under (1) 12 C. J. 805, 8 Cyc 806; (3) 36 Cyc 1119.