THE STATE v. BASKOWITZ, Appellant.

In Banc, May 10, 1913.

1. POLICE REGULATION: In What it Rests. The police power rests in the conservation of the public health, safety and welfare, and their corollaries; and unless a law conserves one of those three things, it cannot be upheld as an exercise of the police power. A statute which makes it "unlawful for any partnership, corporation, dealer, manufacturer, bottler, junk-dealer, dealer in second-hand bottles, . . . to trade or traffic in, buy or sell any box, tray, bottle, jug or siphon" used by a manufacturer of and dealer in mineral water, soda water or other beverage, upon which the name of the owner or manufacturer is stamped or cut or etched, and which mark has been registered, cannot be upheld as a police regulation.

2. BOTTLING ACT: Class Legislation: Unconstitutional. Sections 4829, 4830 and 4831, Revised Statutes 1909, do not affect all persons similarly situated, and are therefore class legislation and unconstitutional. They discriminate between bottlers engaged in the soda and mineral water business and those engaged in the business of bottling ale, porter, lager beer, milk and patent medicines; and make it unlawful to buy or sell registered soda and mineral water bottles on which the name of the manufacturer has been stamped, etched or cut, and relieve the dealers in all other bottles. They discriminate between bottlers, manufacturers, dealers, partnerships and corporations, and private citizens; for any partnership, even a firm of attorneys, and any corporation, even a railroad company, having such a registered bottle in possession, would be committing a misdemeanor, while a private individual, or professional man without a partner, would be guiltless. They make the sale or bare possession of a registered bottle, by a dealer in or bottler of soda water, a criminal offense, while any other dealer, or a dealer in any

other commodity, could have in his possession such registered `bottle without being guilty of any offense. They do not affect all bottlers alike; they do not affect all users of bottles alike. They were enacted for the sole and exclusive benefit and protection of manufacturers of glass bottles used in the soda and mineral water business, and of dealers therein and bottlers thereof, and they exclude from their benefits and protection all other persons and citizens who may use or desire to use, in the conduct of their business, bottles or other vessels with their names engraved, cut or etched therein, such as dairymen, druggists, brewers of ale, lager beer, porter, and every other dealer in any commodity whose nature requires it to be furnished for delivery in a container.

*Held,* by WOODSON, J., dissenting, with whom WALKER, J., concurs, that the said statutes are not an arbitrary classification, because: *first*, soda water and mineral water, being impregnated with highly effervescent and expansive gasses, are placed in extra strong bottles, which are very expensive, costing more than the contents, and this justifies the statutes which attempt to protect the owners of the bottles in the return of their bottles after a delivery to dealers, while the dairyman or druggist does not stamp his name in the bottles, or desire their return if he does; *second,* soda and mineral water bottles are delivered to many places, and will be easily lost, unless the owner is protected by such a statute, while the bottles of the brewers of beer and ale are delivered to saloons, and can easily be collected; and, *third,* malt and spirituous liquors are intoxicating, while soda and mineral waters are not, and those facts may have induced the Legislature to furnish the protection of the statute to one and deny it to the other, and if so they furnish sufficient ground for holding the distinction was not arbitrary.

3. ————: **Special Law: General Law Applicable.** A general law relating to the registering of bottles and other receptacles with the maker's name stamped, cut or blown thereon, applicable to all beverages, can be enacted, without discriminating against or on behalf of any dealer, and hence a special law applicable to manufacturers of bottles used to contain soda or mineral water is unconstitutional. [WOODSON and WALKER, JJ., dissenting.]

Appeal from St. Louis Court of Criminal Correction.— *Hon. Calvin N. Miller,* Judge.

REVERSED.

*Jamison & Thomas* for appellant.

(1) What a statute will imply is as much a part of a legislative enactment as though set forth in terms, and when a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others. 2 Sutherland's Stat. Construction (2 Ed.), sec. 500; State v. Thomas, 138 Mo. 95; State ex rel. v. Buchanan County, 108 Mo. 235; State v. Dinnisse, 109 Mo. 434; Lippman v. People, 175 Ill. 101. (2) The appellant's motion to quash should have been sustained and the appellant discharged, because Secs. 4829 to 4833, R. S. 1909, and each of them, are unconstitutional and void, in that they, and each of them, grant special and exclusive rights, privileges and immunities to persons and corporations therein named, and in that they, and each of them, deny to appellant the equal protection of the laws, and are, therefore, in violation of Sec. 53, Art. 4, Constitution of Missouri, and also of Sec. 1 of Fourteenth Amendment to U. S. Constitution. Cooley's Const. Lim. (7 Ed.), pp. 560-564, 567-574, 556-557; Horwick v. Walker-Gordon Laboratory, 205 Ill. 497; Lippman v. People, 175 Ill. 101; State v. Thomas, 138 Mo. 95; State v. Walsh, 136 Mo. 400; State v. Bliler, 138 Mo. 139; State v. Julow, 129 Mo. 163; State ex rel. v. Tolle, 71 Mo. 645; State ex rel. v. Herrman, 75 Mo. 340; State ex rel. v. Ashbrook, 154 Mo. 375; Millett v. People, 117 Ill. 294. (3) Said sections are unconstitutional and void, in that they deprive the appellant of his property and the right to the enjoyment of the gains of his own industry, and are, therefore, in violation of section 4, article 2, and section 30, article 2 of the State Constitution, and also of the Fifth Amendment and section 1 of the Fourteenth Amendment of the U. S. Constitution. Cooley's Const. Lim. (7 Ed.), pp. 560-564; Horwick v. Walker-Gordon Laboratory, 205 Ill. 497; Lippman v. People, 175 Ill. 101; State v. Julow, 129

Mo. 163; State v. Loomis, 115 Mo. 307; Com. v. Perry, 155 Mass. 117; Godcharles & Co. v. Wigeman, 113 Pa. St. 431; State v. Goodwill, 33 W. Va. 179; State v. Tie & Timber Co., 181 Mo. 536; Asphalt Pav. Co. v. Ridge, 169 Mo. 376. (4) Appellant's plea of not guilty put in issue every material allegation in the information, and the burden of proof remained on the State throughout the trial. State v. Wingo, 66 Mo. 181; State v. Moon, 67 Mo. App. 338; State v. Hardelein, 169 Mo. 579. (5) The judgment of the trial court that the appellant was guilty of the offense charged is not supported by the evidence, as the information charges that the appellant did "trade and traffic in, buy and sell," etc., while there is no evidence that the appellant did any of the acts so charged in the information. State v. Moon, 67 Mo. App. 338; State v. Baker, 144 Mo. 323; State v. Mansfield, 41 Mo. 470; State v. Marshall, 47 Mo. 378; State v. Mahan, 138 Mo. 112.

*Elliott W. Major,* Attorney-General, and *John M. Dawson,* Assistant Attorney-General, for the State; *Phillips N. Moss,* of counsel.

(1) Legislation is not open to the charge of being class legislation if it be general in its operation upon the subjects to which it relates. State v. Cantwell, 179 Mo. 264; State v. Parker Dist. Co., 236 Mo. 298; State ex rel. v. Tolle, 71 Mo. 650; State v. Broadnax, 228 Mo. 25. (2) The law in question does not grant any special privileges or immunities. "It makes provisions in reference to a kind of property, used in a peculiar way, which is of such a nature as to call for peculiar provisions for the protection of the public and of its owners against the fraud of evil doers." Commonwealth v. Anselvitch, 186 Mass. 376. (3) Laws identical with the one in issue in the case at bar have been declared valid and constitutional. People v. Cannon, 139 N. Y. 32; Commonwealth v. Anselvich, 186 Mass. 376. (4) The right of the Legislature specially to

regulate under the police power dealing in second-hand goods in analogous to its right to regulate the liquor traffic. Grand Rapids v. Braudy, 32 L. R. A. 116, 105 Mich. 670; Marmot v. State, 45 Ohio St. 53; Commonwealth v. Mince, 19 Pa. Sup. Ct. 283; Rosenbaum v. Newbern, 32 L. R. A. 124. (5) Every statute is presumed to be constitutional unless the contrary is clearly demonstrated. State ex rel. v. Aloe, 152 Mo. 477; State v. Cantwell, 179 Mo. 261; State v. Parker, 236 Mo. 219; State v. Weber, 214 Mo. 272.

FARIS, J.—Defendant, convicted of a misdemeanor and fined in the St. Louis Court of Criminal Correction, for that, as it was charged, he had violated the provisions of section 4831, Revised Statutes 1909, appeals to this court, challenging the constitutional validity of sections 4831 and 4832, Revised Statutes 1909. His attack is bottomed on the broad charge that these sections, which came into our statutes in 1885, through an act entitled, ''An act to protect the property of manufacturers, bottlers, and dealers in mineral waters, soda water and other beverages, from the loss of their siphons, bottles and boxes'' (Laws 1885, p. 151 et seq.), fall within the category of those enactments which are denounced as ''class legislation.'' The specific charge contained in the information upon which defendant was convicted, with caption and formal parts omitted, is as follows:

''That on September 20, 1898, James M. Dupiech & Company were bottlers, manufacturers of and dealers in mineral water, soda water and other beverages, and used bottles upon which appeared their name and mark of ownership, stamped, cut and affixed thereon, to-wit: 'James M. Dupiech & Company, St. Louis, Mo.' And on said date the said James M. Dupiech & Company, they having an office within the limits of St. Louis, Mo., filed with the recorder of deeds of said city a description of said bottles and of the name and mark

of ownership of the same, to-wit: 'James M. Dupiech
& Company, St. Louis, Mo.' And the said James M.
Dupiech & Company published in the St. Louis Chroni-
cle, a daily newspaper published in said city, twice a.
week for two successive weeks, to-wit, July 28th, July
30th, August 4th and August 6th, 1898, a notice of the
above stated facts. That in the city of St. Louis, on
the 10th day of June, 1911, S. Baskowitz was a junk
dealer in second-hand bottles, and did in said city,
without the written consent of James M. Dupiech &
Company, trade and traffic in, buy and sell, fifty-eight
bottles of the said James M. Dupiech & Company, hav-
ing his name and mark of ownership, to-wit: 'James
M. Dupiech & Company, St. Louis,' stamped, cut and
affixed thereon, the description of which had been
filed and published as aforesaid; contrary to the form
of the statute in such case made and provided and
against the peace and dignity of the State.''

The proof offered tended to show proper compli-
ance by James M. Dupiech & Company with the pro-
visions of sections 4829 and 4830, Revised Statutes
1909, touching the registry or trade-marking of the
bottles about which the controversy here revolved.
The possession, which is by the provisions of section
4832, supra, made *prima facie* evidence of guilt, ap-
pears in the record by the following admission: ''That
on or about the 10th day of June, 1911, the defendant
S. Baskowitz, shipped or delivered to the St. Louis &
San Francisco Railroad Company in the city of St.
Louis, the bottles in question for shipment to one
Grady at Flat River, Missouri.'' Defendant was
charged in the information as ''a junk-dealer in sec-
ond-hand bottles,'' while the proof on this point
showed, and all it showed, was that he ''ran at 16th
and Morgan streets a second-hand bottle shop.'' Fur-
ther facts, if after a discussion of and a passing upon
the constitutional questions raised, they shall yet be
pertinent, will be set out in the subjoined opinion.

## OPINION.

We are conceding and not controverting the general limitations by which we are hedged about in reaching a conclusion touching whether a statute is constitutional or unconstitutional. We fully recognize the rule which enjoines the entertaining of a presumption in favor of the validity of a statute; as well as the rule which requires us to resolve all reasonable doubts in favor of validity, and to indulge all reasonable inference in support thereof. [State v. Thompson, 144 Mo. 314; State v. Watts, 111 Mo. 553; Kelly v. Meeks, 87 Mo. 396.] In passing it may be said that there is no paucity or meagerness of averment on defendant's part as to the Constitution or Constitutions, and the provisions thereof, which are alleged by defendant to be violated by the statutes under consideration. He specifically urges that section 1 of the Fourteenth Amendment, and the Fifth Amendment, to the Constitution of the United States, as well as the whole of section 53 of article 4, of the Constitution of Missouri, sections 4, 11 and 30 of article 2, of the Constitution of Missouri, all are, and each of them is violated.

*Statute: Constitutionality: Class Legislation.*

As premises (minor they may be, but premises nevertheless) we all agree we take it (a) that the defendant is, in the instant case, in a position to urge the unconstitutionality of both sections, supra, because he was convicted for the violation of the substantive provisions of section 4831, by and through the use against him of certain facts (not of direct proof within themselves) made *prima facie* evidence of such violation by section 4832; and (b) that the construction put upon the sections under consideration by the case of State v. Dinnisse, 109 Mo. 434 (holding that the sort of bottles and containers referred to were those used in the soda and mineral water business only), was and is a correct holding of the application of these sections.

We concede the correctness of the view that section 4833 is not in anywise involved in this case. This, for the reason urged, that defendant, not having suffered in anywise by reason of its provisions, is not in a position to challenge the constitutionality thereof. He cannot stand far afield and moot questions, to entertain the court withal, but he must have been in a position to be hurt, and to have suffered hurt in some wise before he can be heard to complain. Necessarily, the scope of this inquiry must include also sections 4829 and 4830. For sections 4831 and 4832 refer to the aforementioned sections for the defining of the sort, and ownership and designated class of bottles (i. e. "registered soda and mineral water bottles") the trading and trafficking in which constitutes the misdemeanor denounced. Section 4831 draws its whole force and virility from the two preceding sections, and in fact makes specific reference thereto. Without the provisions of sections 4829 and 4830 no offense exists, nor could any prosecution be maintained.

Granting so much, in the light of these concessions and agreed premises, let us analyze the sections before us. Section 4831 declares that it is "unlawful for any partnership" (there is no limitation as to kind of partnership, or other words of limitation, or words calling for the application of the doctrine of *ejusdem generis*). "corporation" (again there are no words limiting the application to any particular sort of corporation, or corporation of any particular business), "dealer" (evidently any dealer, possibly excepting those mentioned in Mr. Hoyle's esteemed treatise), "manufacturer" (of any and whatever kind), "bottler, junk-dealer or dealer in second-hand bottles, without the written consent of the owner . . . to trade or traffic in, buy or sell . . . any such box, tray, bottle, jug, or siphon so marked or stamped . . . and any dealer, partnership, corporation, manufacturer, bottler, junk-dealer or dealer in second-hand bottles, who

shall violate the provisions of this section, shall be deemed guilty of a misdemeanor.''

Certain canons of construction have been laid down for us. In Barbier v. Connolly, 113 U. S. 32, the rule of segregation was stated thus: ''Class legislation, discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a *public purpose* [italics mine], is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment.''

In Allen v. Pioneer-Press Co., 40 Minn. 120, it was said: ''Laws public in their objects may be confined to a particular class of persons, if they be general in their application to the class to which they apply, provided the distinction is not arbitrary, but rests upon some reason of public policy growing out of the condition or business of such class.''

What public purpose is subserved by the sections, or either of them, under discussion? Clearly none. No phase of the police power is involved. The sections do not make for better health, or more sanitary conditions. (It might well be that the soda and mineral water business might be regulated for this purpose, but that we do not decide.) This law does not prohibit the refilling of a soda-water bottle, nor the sale of same, nor the trafficking in same absolutely, but it does forbid certain classes of persons from refilling, *unless by written permission.* Could permission in writing add one jot or tittle toward making clean and sanitary that which was not clean and sanitary before permission was given in writing? So far as this law forbids, permission in writing being had, any person, be he dealer, bottler, or junk-dealer, might fill any of these bottles or containers with sewer water and sell it for attar of roses. Is the public health affected or safeguarded by the ''marring or erasing'' a name or mark from a box, or tray, or by breaking

a "registered" bottle or siphon? Keeping these pro-
visions and declarations in mind can it be seriously
contended that there is any element involved of that
phase of the police power having for its object the
safeguarding and protection of the public health? In
what way is the public safety, or health, or welfare
conserved? In these three things and their corollaries
rest the foundation of the police power. Clearly there
is here no phase of the police power present in or
contemplated by this law.

The law discriminates as between bottlers en-
gaged in soda and mineral water business and those
engaged in the business of bottling ale, porter, lager
beer, milk and patent medicines. The former may
"register" their bottles and containers under this act;
the latter may not. It discriminates as between bot-
tlers, manufacturers, dealers, partnerships and cor-
porations and private citizens. The words partner-
ship, corporation, dealer, etc., if they be *ejusdem
generis* with the two preceding sections, make the sale,
or bare possession of a bottle, by a dealer in or bottler
of soda water, a criminal offense, while any other
dealer, or a dealer in any other commodity, could have
in his possession such registered bottle or container
without being guilty of any offense whatever. If these
words are not used in a special sense, and if they re-
fer to any partnership, or any corporation, a firm of
attorneys even, or a railroad corporation, would be
committing a misdemeanor in having in its possession
a single bottle, while a private individual, or a profes-
sional man without a partner would be guiltless.

Does the act affect then all persons similarly situ-
ated? It does not affect all bottlers alike. It does not
affect all users of bottles alike. It does not affect all
users of trays alike. It does not affect all users of
boxes alike; nor does it strike with equal and the same
justice those who use the jug. We have seen that it
does not equally affect all persons who may be in pos-

session of a registered bottle, box, jug or tray. Some are made guilty of a crime, while others, doing the same act, are yet guilty of no offense.

Section 53 of article 4 of our own Constitution, not granting powers to the Legislature, but limiting them, says in subdivision 26: "The General Assembly shall not pass any local or special law . . . granting to any corporation, association or individual any special or exclusive right, privilege or immunity." By subdivision 32 of the same section and article, the Legislature is limited *"in all other cases where a general law can be made applicable, no local or special law shall be enacted;* and whether a general law could have been made applicable . . . is declared a judicial question." Can it be reasonably urged that a general law could not have been passed having for its object the protection of bottlers, or trade-marks? If no such general law could be enacted, how can a special one, under the conditions and facts here, be upheld?

But we are not left without well-considered authority on this point. An act similar to this, but broader, in respect at least to the fact that, by its terms, it included bottlers of "ale, porter, lager beer," as well as bottlers of soda and mineral waters, was passed in Illinois. Yet on full and careful consideration by the Supreme Court of that State, this law was held unconstitutional in that it violated a provision of the Constitution of Illinois identical in import and practically identical in language with ours. This provision of the Illinois Constitution identical with subdivision 26 of our Constitution above quoted, is section 22, article 4, which reads thus: "The General Assembly shall not pass local or special laws . . . granting to any corporation, association or individual any special or exclusive privilege, immunity, or franchise whatever." [Constitution of Illinois, 1870.]

Construing the act above referred to, the title of which was: "An act to protect manufacturers, bottlers and dealers in ale, porter, lager beer, soda, mineral water and other beverages, from the loss of their casks, barrels, kegs, bottles and boxes," in the light of this provision of the Illinois Constitution, the Supreme Court of Illinois said:

"The act in question applies only to manufacturers, bottlers and dealers in ale, porter, lager beer, soda, mineral water and other beverages. The term 'other beverages,' under the settled rule of construction, includes only beverages of the same kind or class as the particular antecedent terms of description employed in the act. The object of the act, as gathered from its provisions, is to protect and benefit that class of persons. It gives to them the exclusive right to register the names and marks of ownership, stamped or marked on their casks, barrels, kegs, bottles or boxes, and gives to them the exclusive privileges and protection arising therefrom. It confers upon them the power to call upon the State and its officers and judiciary to act as collectors of their bottles, kegs and boxes which they have voluntarily scattered over the State among their customers." [Lippman v. People, 175 Ill. 106.]

Further discussing generally the law, the constitutional rules and limitations, and the vice of such statutes, the court in the above case said:

"General laws have been defined to be those which relate to or bind all within the jurisdiction of the law-making power, while a special law is limited in the object to which it applies. It is often the case, however, that the rights and protection given by a law cannot be enjoyed by every citizen by reason of the subject to which the law relates. If the law is general, and uniform in its operation upon all persons in like circumstances, it is general in a constitutional sense, but it must operate equally and uniformly upon

all brought within the relation and circumstances for which it provides. On the other hand, if it is limited to a particular branch or designated portion of such persons, it is special. [People v. Wright, 70 Ill. 388; People v. Cooper, 83 Ill. 585; Hawthorn v. People, 109 Ill. 302.] Although general in its character, a law may, from the nature of the case, extend only to particular classes, such as minors, married women, laborers, bankers or common carriers. Such a law is not obnoxious to the provisions of the Constitution if all persons of the class are treated alike under similar circumstances and conditions, but it is not a proper application of the definition to say that a law is general because it applies uniformly to all persons in the conditions and circumstances for which it provides, although only a particular branch of a class or some particular description of persons. If an act should attempt to confer privileges only on persons of a certain stature it could be said to apply uniformly to all people answering such description, and yet it would be absurd to say that such a law would be a general one. The classification must be so general as to bring within its limits all those who are in substantially the same situation or circumstances.

"This act singles out one branch of a class of manufacturers and dealers who may have occasion to use, or who do use in their business, bottles, barrels, kegs or other packages for their goods. It selects those whose particular manufacture or stock consists of certain varieties of drink. No other person who manufacturers any product or sells it in casks, barrels, kegs, bottes or boxes can avail himself of the privilege of registering his trade-mark or of the consequent protection, but the act denies to him the privileges afforded to those named in the act. The grocer, farmer, fruit dealer, merchant, druggist or other dealer or manufacturer cannot avail himself of the privileges or remedy

afforded by this act to protect himself against the loss of his property under the same circumstances.''

The case of People v. Cannon, 139 N. Y. 32 (upon which the State seems largely to rely in the case. at bar), does not discuss or settle any point of pith or moment involved in this discussion. We will not take the time to analyze the Cannon case. Such analysis has already been made in the opinion in Lippman v. People, supra. Commenting upon the Cannon case and upon what it actually held, Mr. Justice CART-WRIGHT, speaking for the Supreme Court of Illinois, said:

''These questions were neither considered nor decided in People v. Cannon, 139 N. Y. 32, which is the main reliance of counsel to sustain the act. The New York statute is much more comprehensive than this act, and includes dealers in milk and cream and manufacturers and dealers in medicines, medical preparations, perfumery and compounds or mixtures, as well as those embraced in the terms of this act. The validity of this statute was tested on the claim that it granted a monopoly to the manufacturers of beverages by prohibiting the re-sale or gift by a purchaser of the contents of a bottle which the manufacturer refused to sell, and that it destroyed or unlawfully decreased the trade in empty bottles, which is a legitimate trade and entitled to the equal protection of the law. The statute was held not subject to the first objection, and it was said that a buyer of the contents could sell the same in the bottle and deliver the bottle with the contents. As to the second objection, it was held that the additional care required of a dealer in buying empty bottles was not an unreasonable restriction. The statute only applied where the bottle was not purchased with the contents from the person or corporation whose trade-mark was on it, and in the three cases heard together the judgments in two were reversed because there had been deposits of money

as surety for the return of the bottles, which amounted to a conditional sale of them. The decision is not authority on any proposition in this case.''

The case of Commonwealth v. Anselvich, 186 Mass. 376, is cited by the State, and seems to have been relied on, by all and sundry urging the constitutionality of the law under consideration, as decisive. Let us examine and consider whether this be so. A conviction in the Anselvich case, supra, was upheld under section 16, of chapter 72, Revised Laws Massachusetts 1902. This section is as follows:

''Whoever fills with a beverage, with intent to sell the same, any vessel, marked or distinguished as aforesaid, the description of which has been filed and published as provided in the preceding section, or defaces, erases, covers up or otherwise removes or conceals any such name, or the word 'registered' thereon, or sells, buys, gives, takes or otherwise disposes of or traffics in the same, without the written consent of, or unless the same has been purchased from, the person whose name is in or upon the vessel so filled, defaced, trafficed in or otherwise used or disposed of shall, for the first offense, be punished by a fine of not less than fifty cents for each vessel or by imprisonment for not less than ten days nor more than one year, or by both such fine and imprisonment; and for each subsequent offense, by a fine of not less than one dollar nor more than five dollars for each such vessel or by imprisonment for not less than twenty days nor more than one year.''

The provisions of said section 16, as will be noted, provide that ''*whoever* fills with a beverage, with intent to sell the same, any vessel, marked or distinguished as aforesaid (i. e., as set out in section 15, which I show below) . . . or sells, buys, gives, takes or otherwise disposes of or traffics in the same without the written consent of, or *unless the same has been purchased* from the person whose name is in, or upon

the vessel,'' is deemed guilty of a misdemeanor. [Italics ours.]

*Any person* is made guilty if he do the things prohibited by the above section. In the section of the Missouri statute here under discussion, some would be guilty and others innocent; it does not apply to all persons, corporations, or partnerships and dealers alike. Besides, absolute sale of the containers may be made under the Massachusetts law by express exception; they are forbidden under the Missouri law, as is hereafter noticed, except by artifice and indirection.

The Massachusetts law applies to *all bottlers engaged in manufacturing, bottling or selling beverages,* as note section 15, Revised Laws 1902, which is as follows:

"Persons engaged in manufacturing, bottling, or selling beverages in vessels with their name and the word 'registered' branded, engraved, blown or otherwise produced thereon, or on the boxes used by them, may file in the office of the clerk of the city or town in which their principal place of business is situated, and also in the office of the secretary of the commonwealth, a description of the name so used by them, and shall publish such description once in each of four successive weeks in a newspaper, if any, published in the city or town in which said description has been filed; otherwise, in a newspaper published in the county in which said city or town is situated."

Under the section supra, *any person* engaged in *"manufacturing, bottling, or selling beverages"* may take advantage of this law and be protected. Under our law this is not so; only "soda and mineral water" bottlers may adopt the law's provisions, or be given its protection. This is seen to be true from the very statutory provisions of the Massachusetts statute itself, for the statute itself defines what are "beverages" within the purview of section 15, supra, as note the terms of section 1 of the act: "The following

words shall, in addition to their ordinary meaning, have the meaning herein given: ' The word 'beverage' or 'beverages' in section fifteen to eighteen, inclusive, includes also 'milk,' 'cream,' 'soda water,' 'mineral' or 'aerated waters,' 'ale,' 'beer,' 'ginger ale' or 'similar beverages.' ' "

That this law could be constitutionally valid in Missouri, we verily assert, without crossing this bridge, or so deciding till we reach the question. When viewed in the light of the inclusions and safeguards of the Massachusetts enactment, and when we compare our own statute with that of Massachusetts, can we say that they are similar, and that the upholding of the one must result in the upholding of the other? Most certainly not. In our views the mere setting out of the points of dissimilarity, condemns our own statute beyond a reasonable doubt, and shows more clearly than any argument could, its utter constitutional invalidity.

In the light of the record, and for the mere purpose of reversal or affirmance of this case, it may be legally sound to assume that, since there is no proof in this record that any other bottlers or manufacturers of any other vended beverages, carry on their business in the same way that soda water bottlers do, the Legislature had the right to erect this business into a class, because there is in fact no other business which by its methods falls into the same class. In short, if it be urged that even though the law here be constitutionally invalid, because it is class legislation, yet as the record is silent as to the manner of dealing of other bottlers (e. g., bottlers of milk, ale, beer, porter), we cannot judicially notice that the latter sort of bottlers do business just as the soda water bottlers do. On the specific question of judicial notice, we agree, but we do not regard this as precluding the constitutional investigation. We may not notice without proof the business methods of other bottlers, but

we can judicially notice that there are others engaged in vending beverages, medicines and divers other liquids in bottles, who might desire to take advantage of this registry law, and who might desire to be protected from the loss of their property by interposing the criminal provisions of section 4831.

There is no escape from the conclusion that this law was passed for the sole and exclusive benefit and protection of manufacturers of glass bottles used in the soda and mineral water business, and of dealers therein and bottlers thereof, and that it excludes from its benefits and protection all other persons and citizens of this State who may use, or who may desire to use, in the conduct of their business, bottles or other vessels, with their names engraved, cut, stamped, etched or otherwise affixed thereto or thereon, such as dairymen, druggists, brewers of ale, lager beer, porter, as also every other business the nature of which requires it to furnish to its customers a container for the delivery of its commodities. Affecting then those only, and the bottles and other receptacles only, of the soda water business, can there be two views as to whether such a classification is not both unreasonable and arbitrary? We think it impossible in the light of the similar statutes of other states and the construction thereof, in this opinion set out and discussed.

As we have already seen there is no phase of the police power involved; the sole object of the law is for the benefit of the soda water business, and to this end it aids the persons named to recover back their bottles, boxes and trays, which they have permitted to go out of their possession in the usual and ordinary course of transacting their business. Why should the law thus favor the soda water dealer, while denying the right of registry and recovery of containers (under the act's provisions), and the right of search, to countless other lines of business, which likewise use, or might use, bottles, boxes and trays with their names

blown or cut, or stamped, or engraved thereon, in delivering their commodities to their customers. The very statement of the facts brands the classification of this act as arbitrary and unreasonable and therefore unconstitutional. [Compare State ex rel. v. Ashbrook, 154 Mo. 375; State v. Julow, 129 Mo. 163.] There is no provision in this section for the sale or conveyance of title to a registered bottle or container. So, if the owner, *in whose name registry thereof had been had,* desired to sell his bottles in good faith and absolutely, he would be unable to do so by the ordinary manner of sale, without rendering his vendee liable to prosecution for being in possession of registered bottles. This view we get from the face of these statutes. If it be contended that the provision forbidding use or possession of registered bottles ''without written permission,'' would fully protect a vendee, then these sections restrict the right to contract; they require an instrument in writing to pass the title to this particular kind of personal property, whereas, title to other personal property passes by delivery made with the intent to pass title.

Furthermore, it is clear and patent that this act (originally passed in 1885 as *''an act to protect the property of . . . bottlers and dealers in mineral waters, soda water, and other beverages, from the loss of their siphons, bottles and boxes.''* Laws 1885, p. 151), transgresses also that subdivision of section 53 of article 4 of the Constitution of Missouri, which we have already quoted, and which provides that *''where a general law can be made applicable, no local or special law shall be enacted.''* By the express terms of the Constitution, the determination of the question of applicability is remanded to the courts to be by them alone resolved, regardless of legislative assertion.

If the act under consideration is special, then it is unconstitutional; if a general law could have been

passed affecting the same persons, then this act is unconstitutional. The question of whether it is special or not has been under discussion herein at much length, and need not be further adverted to. It would seem that the mere putting of the question as to whether a general law can be made applicable, would be to answer it in the affirmative. Without going into the methods of accomplishing this, and without suggesting ways and means thereof, of which two or three different ones occur to us, it ought to be sufficient to call attention to the admirable enactment of the State of Massachusetts on this subject, which has already been quoted from, and which occurs in chapter 72, Revised Laws 1902, of that State. If the Legislature of Massachusetts can pass and has passed a general law on this subject, cannot the Legislature of Missouri likewise pass such a law? We need not look to the Constitution of Massachusetts to determine this. If their law will be good under our Constitution, it makes no difference whether it is good or bad under theirs. They have, however, held it to be constitutional.

We are convinced that the result sought to be attained by these statutes is meritorious; that a constitutional enactment regulating the subject-matter would minimize theft and the receiving of stolen property, and make for morality; that viewed in the concrete case defendant's condition and attitude excite no emotion, except condemnation, but we are constrained to line these statutes by the Constitution, disregarding our conception as to the moral phase and the eternal fitness of things. We are thoroughly convinced that it will be long before we are confronted judicially by a statute which so clearly and indubitably violates so many different provisions of our Constitution as do these here considered. So deeming it, we so hold it, thus obviating the necessity of passing on other matters urged. It follows that the judgment here should

be reversed and the defendant discharged, and so it is ordered.

*Lamm, C. J.,* and *Graves* and *Bond, JJ.,* concur; *Woodson, J.,* dissents in opinion filed; *Brown* and *Walker, JJ.,* dissent.

## DISSENTING OPINION.

WOODSON,.J.—I dissent from the majority opinion and I fully concur with the learned opinion written by ROY, Commissioner, not only for the reasons stated by him, but also for the following reasons:

Because it is a well known fact that the bottles, containers or receptacles of the beverages mentioned in the statutes under consideration, must **Reasonable Classification.** be and are, made of extra good and heavy material, and must be extra strong, for the reason that it is common knowledge that such beverages are inflated with strong and highly expansive gases. This makes the cost of such containers very expensive.

It is also well known that the actual cost of the beverages contained therein are very inexpensive. In fact, much less than the cost of the bottles or containers in which they are placed.

Because of the expensive containers and inexpensive beverages, the former are rarely, if ever, sold with the latter, for the reason that the cost of the drink would be too expensive for general consumption. From this condition of things, it becomes highly necessary to protect the ownership of such receptacles, in order that they may be refilled repeatedly, and thereby reduce the cost of such beverages to a minimum, and at the same time protect the public from imposition by having them refilled with spurious goods.

In my opinion, this is a sufficient reason for the classification made by the statute, and removes it from what is known as an arbitrary classification.

The same reason does not exist in favor of the

classification of containers of beer and milk. The first cost of the production of both are so great that there are but few who do, or could afford to deal therein, and it is a well known fact, that all such wish to, and do, use their own receptacles and trade-marks (except dairymen in small towns, who furnish no containers), in order to build up their own business, and have no desire to build up the business of someone else by the use of their bottles, etc.

Moreover, both of those businesses are conducted at well known places, namely, at the saloon and at the home, which prevents the receptacles mentioned from becoming scattered, lost or stolen, and at the same time renders their collection and return to the owner easy and inexpensive. But not so of the beverages mentioned in the statute; they are sold and scattered to the four quarters of the earth; and if some such protection is not afforded the owners thereof, they can never recover their possession or protect the public from fraudulent imposition of the counterfeiter, or maintain cheap prices for their goods.

As to the druggist, there is no special reason for affording him such protection. The cost of the medicine or other merchandise is so insignificant in comparison to the cost of the receptacles, he invariably sells the latter with the former, and would not, as a rule, receive the bottle back as a gift, if offered, much less pay for its return and cleaning.

I, therefore, concur with the opinion written by Commissioner Roy, which is hereto attached and made a part hereof.

*Walker, J.,* concurs herein.

## OPINION BY ROY, C.

ROY, C.—Defendant was convicted of violating what is sometimes called the "Bottling Act" of 1885 (Laws 1885, p. 151), as amended in 1893 (Laws 1893, p. 256), being sections 4829 to 4833 inclusive of the

Revised Statutes. Section 4829 provided for the registration of their trade-marks by "all partnerships, corporate bodies, manufacturers of glass bottles, bottlers, manufacturers of and dealers in mineral waters, soda water, or any other beverages whatsoever, who may use boxes, trays, siphons, jugs or any other vessel upon which shall appear the name or names of the partnerships, corporate bodies, dealers, manufacturers or bottlers, or other mark of ownership stamped, engraved, cut, etched, or in any manner affixed thereon," and for the giving of notice of such registration by publication.

Section 4831 makes it a misdemeanor for any junk-dealer or dealer in second-hand bottles, or others therein named without the written consent of the owner or owners thereof, to trade or traffic in, buy or sell, or wilfully to mar or erase a name, mark or marks thereon, or wilfully to break, destroy or otherwise injure any such bottle, tray, jug or siphon so marked and stamped, a description of which shall have been filed and published as provided in the two preceding sections, or to fill any such bottle, jug or siphon with mineral water, soda water, seltzer water or any aerated waters or other beverage whatsoever, or any other article of merchandise, medicine, compound or preparation for the purpose of sale or traffic.

Section 4832 makes the possession of such vessels by junk dealers, second-hand dealers and others *prima facie* evidence that such possession is unlawful.

Section 4833 provides for the issuance of a search warrant to discover whether any such vessels are unlawfully upon the premises of persons other than the owner.

The material part of the information is as follows: "That on July 21, 1902, James M. Dupiech Bottling Company were bottlers, manufacturers of and dealers in mineral water, soda water, and other beverages, and used bottles upon which appeared their

name and mark of ownership, stamped, cut and affixed thereon, to-wit, 'James M. Dupiech & Company, St. Louis, Mo.' And on said date the said James M. Dupiech Bottling Company, they having an office within the limits of St. Louis, Mo., filed with the recorder of deeds of said city a description of said bottles and of the name and mark of ownership of the same, to-wit: 'James M. Dupiech & Company, St. Louis, Mo.' And the said James M. Dupiech Bottling Company published in the St. Louis Chronicle, a daily newspaper published in said city, twice a week for two successive weeks, to-wit, July 9th, July 12th, July 16th and July 19th, a notice of the above stated facts. That in the city of St. Louis, on the 10th day of June, 1911, S. Baskowitz was a junk-dealer in second-hand bottles and did in said city, without the written consent of James M. Dupiech Bottling Company, trade and traffic in, buy and sell, fifty-eight bottles of the said James M. Dupiech Bottling Company, having his name and mark of ownership, to-wit, 'James M. Dupiech & Company, St. Louis, Mo.,' stamped, cut and affixed thereon, the description of which had been filed and published as aforesaid.''

Defendant promptly filed a motion to quash the information for the reason that the statute under which the information is filed is in violation of articles 4 and 5 of the amendment to the Constitution of the United States, and of section one, article 14, of such amendments, and in violation of section 4, 20, 23, 28, 30, article 2, and of section 53 of article 4, of our State Constitution. The motion was overruled.

The evidence was sufficient to show a registration of the trade-mark and the publication of notice thereof as alleged in the information.

The only evidence as to the guilt of the defendant is an admission made by the defendant for the purpose of the trial and made at the time of the trial that he shipped or delivered to the St. Louis & San Fran-

cisco Railroad Company in the city of St. Louis, for shipment, the bottles in question to one Grady at Flat River, Mo.

The evidence for the State shows that there is in St. Louis a corporation known as the Missouri Bottlers' Association, of which most of the dealers in soda water in that city are stockholders. That association does not manufacture or deal in soda water or other beverages. It is merely a "clearing house" for the bottles of its members. The members of that association, in the course of their business, gather up the bottles of the other members of the association and take them to it, where they are distributed to the proper owners, who pay to the association a so-called salvage of ten cents a dozen. The association pays to persons not its members a salvage of six cents a dozen for such bottles. Those bottles cost the dealer new from thirty to thirty-five cents a dozen. There is no evidence in the case as to the price at which the dealers sell their goods in bottles.

There was conflicting evidence as to whether the Missouri Bottlers' Association, as the agent of its members, issued cards authorizing second-hand dealers and others to buy and sell the bottles, and a declaration of law covering that point was given by the court. The trial was before the court without a jury.

I. It is claimed by the appellant that the statute is in contravention of section 53 of article 4 of our State Constitution, which prohibits what is ordinarily known as "class legislation."

We are enjoined to proceed with caution in the consideration of this question, and to resolve all reasonable doubts in favor of the validity of the statute, and to indulge all reasonable inferences in support of it. [Cooley on Const. Lim. (7 Ed.), p. 227; State v. Price, 229 Mo. l. c. 678.]

A strong presumption exists in favor of the validity of a statute. [Shohoney. v. Railroad, 231 Mo. l. c. 148.]

The courts have held very uniformly that the State may legislate in regard to a class, but cannot *arbitrarily* divide that class into two parts, giving to one part a privilege, or subjecting it to restrictions which do not apply to the others in the same class. [State v. Julow, 129 Mo. l. c. 177; State v. Walsh, 136 Mo. l. c. 405; State ex rel. v. Ashbrook, 154 Mo. 375; Gundling v. Chicago, 177 U. S. l. c. 188.]

Class Legislation.

This court in State v. Dinnisse, 109 Mo. 434, held that the word "any other beverages whatever" must be construed to mean beverages of the same kind as mineral or soda waters, and that spirituous liquors were not of that kind. We conclude that the statute, for the same reason, does not apply to malt or fermented liquors.

Now it appears from the evidence that soda water is sold in bottles, and that the ownership of the bottles is retained by the dealer. The course of dealing in the trade is such that the bottles get scattered about beyond the knowledge of the owners in such numbers that they have established the Missouri Bottlers' Association, whose sole business seems to be that of acting as a clearing house for the bottles. It thus appears that the bottles of the soda water dealers are a property used in a peculiar way, making them the special prey of junk-dealers and dealers in secondhand bottles.

If it be suggested that the dealers in malt and spirituous liquors do business in very much the same way and are entitled to the same kind of protection for their bottles, kegs and boxes, we suggest that the mere fact that beer and whiskey are intoxicating, while soda and mineral waters are not, may have caused the Legislature to furnish protection to one class and re-

fuse it to the other. Such distinction is not, to say the least, *arbitrary,* but one which we must presume the Legislature fully considered. The fact that this court might disagree with the Legislature as to such a policy does not justify us in interfering with the constitutional power of legislation.

Dealers in milk and cream deliver their goods in vessels the ownership of which is retained by the dealer. But milk is ordinarily so delivered at fixed places of residence to persons of known responsibility, and those vessels are ordinarily regularly collected by the same persons who delivered them to the customer. There is not in the dairy business, so far as we know, such scattering of vessels among unknown and irresponsible persons and in unknown places as is the case in the soda water business. A few milk vessels may be occasionally lost or appropriated by junk and second-hand dealers, but, from the very nature of the business, the losses in the dairy business cannot even approximate that in the soda and mineral water business. The Legislature may have taken the view that dairymen would not take the benefit of the act, as their losses would not justify the expense of registering their trade-mark and publishing the notice. Hence, we cannot conclude that in distinguishing between the dairyman and the soda water dealer, the Legislature acted arbitrarily.

If there is any other class of dealers whose business is conducted in such a way as to make their exclusion from the benefits of the statute an arbitrary distinction on the part of the Legislature, our attention has not been called to it. Whoever asserts the unconstitutionality of a statute must be able to show in what respect his assertion is well founded.

In People v. Cannon, 139 N. Y. 32, the court upheld a similar statute giving protection to dealers in soda and mineral water, beer, cider, milk, cream, medi-

cines and other things therein mentioned. It must be said, however, that the question as to whether that statute was "class legislation" was not discussed.

In Lippman v. People, 175 Ill. 101, the court held unconstitutional a statute with provisions similar to ours for the protection of dealers in "ale, porter, lager beer, soda, mineral water and other beverages." That court, in the course of its opinion said:

"This act singles out one branch of a class of manufacturers and dealers who may have occasion to use, or who do use in their business, bottles, barrels, kegs or other packages for their goods. It selects those whose particular manufacture or stock consists of certain varieties of drink. No other person who manufactures any product or sells it in casks, barrels, kegs, bottles or boxes can avail himself of the privilege of registering his trade-marks or of the consequent protection, but the act denies to him the privileges afforded to those named in the act. The grocer, farmer, fruit dealer, merchant, druggist or other dealer or manufacturer cannot avail himself of the privileges or remedy afforded by this act to protect himself against the loss of his property under the same circumstances."

It will be noticed that the court entirely overlooked the difference in the nature and method of the business of the soda water dealer as compared with the business of the farmer, grocer, fruit dealer, merchant and druggist. It is true in statutory as well as in common law that where the reason ceases the law itself should cease. In 1901 the Legislature of Illinois attempted to remedy the defects of their former statute by enacting a statute giving similar protection to all owners of "cans, tubs, firkins, boxes, bottles, casks, bonds, kegs, cartons, tanks, fountains, vessels or containers" without any limitation as to the business in connection with which such vessels were used. The court in Horwich v. Walker-Gordon Laboratory, 205

Ill. 497, held it unconstitutional as granting to owners of the specific class of personal property rights and privileges not given to owners of other personal property. We concede that the case was properly decided. It should have been otherwise if the act had provided protection for such articles as named when used in connection with some business peculiarly requiring a kind of protection not necessary for other property. In Commonwealth v. Anselvich, 186 Mass. 376, a statute was upheld giving similar protection to dealers in beverages, milk and cream. The court said:

"The defendant contends that the statute improperly gives advantages to certain classes of persons, which others do not have. In this he is mistaken. It makes provisions in reference to a kind of property, used in a peculiar way, which is of such a nature as to call for peculiar provisions for the protection of the public and of its owners against the fraud of evil doers. So, too, the provision making possession by an agent or dealer, without the written consent of or purchase from the owner, *prima facie* evidence of a violation of the statute, is not class legislation. The peculiar conditions referred to in this part of the statute have such a probable connection with the commission of the offense, that the Legislature well may legislate in reference to them. It is not persons who are particularly dealt with in the statute, but the conditions which pertain to their occupation and business. It is in the power of the Legislature to make certain conditions *prima facie* evidence of the commission of a crime, and this is a common kind of legislation. [Commonwealth v. Williams, 6 Gray, 1; Holmes v. Hunt, 122 Mass. 505, 518; Commonwealth v. Hall, 128 Mass. 410; Commonwealth v. Barber, 143 Mass. 560; Commonwealth v. Intoxicating Liquors, 172 Mass. 311.]"

We do not affirm that there is no line of business so similar to the soda water business that a legisla-

tive distinction between them would be arbitrary and against the Constitution. We base our conclusion on the fact that if such similar business does exist, it is not so well known that we can judicially notice it; and the defendant has not furnished any evidence of it.

II.　There was evidence tending to prove that defendant trafficked in the bottles as charged. His possession of them and shipping them to another party was, under the statute, *prima facie* proof

**Prima-facie Case.** that he did so traffic in the bottles. The Legislature has the power to provide that certain facts shall constitute *prima facie* proof of a controverted fact. [Cooley's Con. Lim., 524 et seq.; Coe v. Ritter, 86 Mo. 1. c. 282; People v. Cannon, 139 N. Y. 32; Commonwealth v. Anselvich, supra.]

III.　It is unnecessary for us to pass on the validity of section 4833 in regard to proceedings under a search warrant. That section is not in-

**Search Warrant.** volved in this case; and, if it is invalid, such fact does not, in the least, affect the other sections under discussion. [Commonwealth v. Anselvich, supra; State v. Heger, 194 Mo. 1. c. 716.]

IV.　It is contended that the provision of the statute requiring the written consent of the owner to authorize one to traffic in the bottles deprives the defendant of his liberty and property without due process of law. Appellant's brief has the

**Restricted Sale.** following: "It is made unlawful by this act to purchase from the owner thereof one of these receptacles bearing the registered mark without first or at the same time obtaining the written consent of the owner to make the purchase. This is an unreasonable restraint upon the right to buy and sell personal property such as that specified, for the

reason that the original owner has a right to sell his property whether he first secures his own written consent or not, and if he has such right, then his purchaser has an equal right to buy the same from such owner.'' We see no such incongruity in the law. It does not invalidate a sale not evidenced by writing. Bottles sold by the dealer pass out from under that law so far as it may affect the right of people to traffic in them. The written consent is not necessary except where the title remains in the owner of the trademark. As was said in People v. Cannon, supra, ''Under the broadest definition of the term liberty, as used in the Constitution, it is not probable that any one would contend that is covers, or ought to cover the liberty of dealing in property which the original owner has not sold to any one or authorized any one else to deal in.''